UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAVEN MOSES, STARAISHA MORRIS, DWAYNE DALE, and ISMAIYL JONES, individually and on behalf of themselves and all current and former employees, | 18-CV-1200 (JGK) |
| Plaintiffs, | |
| - against - | |
| GRIFFIN INDUSTRIES, LLC, MICHAEL SMITH, *Individually*, WINSTON SMITH, *Individually*, ANDREW MUNIZ, *Individually*, AARON MUNIZ, *Individually*, DANE YEE, *Individually*, MARIO LOPEZ, *Individually*, GRIFFIN SECURITY SERVICES, CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 1430, WORKFORCE1, NIQUE IRVING, and SEXTON ALSTON, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S
## <u>MOTION TO DISMISS</u>

STEVEN M. SCOTTI
Attorney for Defendant
Consolidated Edison Company
  of New York, Inc.
4 Irving Place, Room 1800
New York, New York 10003

**OF COUNSEL:**
**ADAM J. SMILEY**
**212-460-3990**

May 11, 2018

i

TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS ............................................................................................................................................ 1

ARGUMENT ................................................................................................................................. 2

I.      MOTION TO DISMISS STANDARD ............................................................................ 2

II.     PLAINTIFFS' CLAIMS AGAINST CON EDISON SHOULD BE DISMISSED ............ 2

        (A) The Court Should Disregard Plaintiffs' Affidavits ........................................................ 2

        (B) Plaintiffs Do Not Sufficiently Allege That They Were Jointly Employed By
            Con Edison............................................................................................................... 3

                1.   As A Preliminary Matter, The Court Should Ignore Plaintiffs' Generic
                     Allegations Against "Defendants" ........................................................................ 4

                2.   Plaintiffs Fail To Allege That Con Edison Exercised Formal Control .................. 5

                3.   Plaintiffs Fail To Allege That Con Edison Exercised Functional Control ............ 9

                4.   Plaintiffs' FLSA and NYLL Claims Should Be Dismissed................................ 15

        (C) In Addition To Plaintiffs' Failure To Establish That Con Edison Jointly Employed
            Them, Plaintiffs' Claims Are Deficient For Other Reasons......................................... 15

                1.   Plaintiffs Did Not Adequately Plead Their Minimum Wage Claims .................. 15

                2.   Plaintiffs Did Not Adequately Plead Their Overtime Claims ............................. 16

                3.   OSHA Does Not Confer A Private Right Of Action ........................................... 17

                4.   Plaintiffs' Prevailing Wage Claims Are Deficient And Should Be Dismissed .... 18

                5.   Plaintiffs' Spread-of-Hours Claims Are Legally Deficient ................................. 19

                6.   Plaintiffs' Claims Under NYLL § 195 Should Be Dismissed ............................. 19

                7.   Plaintiffs Have Not Plausibly Alleged An FLSA Retaliation Claim.................... 20

                8.   Plaintiffs' Allegations Under The General Business Law Are Fatally Flawed .... 21

                9.   Plaintiffs Have Not Plausibly Alleged An Emotional Distress Claim.................. 22

CONCLUSION.......................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 673 (S.D.N.Y. Dec. 22, 2000) .............................. 21

*Aquino v. E. Port Excavation & Utilities Contractors, Inc.,* 2014 WL 1276234, at
  *2 (E.D.N.Y. Jan. 28, 2014) ................................................................................................. 5

*Azeez v. Ramaiah*, 2015 WL 1637871, at *5 (S.D.N.Y. April 9, 2015) ...................................... 19

*Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d
  146, 153 (2d Cir. 1995)........................................................................................................... 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 2

*Burks v. Yetman,* 1992 WL 119132, at *1 (N.D.N.Y. May 18, 1992)........................................... 5

*Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir.1984)......................................... 3

*Diaz v. Consortium for Worker Educ., Inc.*, 2010 WL 3910280, at *4 (S.D.N.Y.
  Sept. 28, 2010) ......................................................................................................................... 7

*Domino's Pizza Inc.*, 2018 WL 1597593, at *6–7 (S.D.N.Y. Mar. 27, 2018) ....................... 20, 21

*Ethelberth v. Choice Sec. Co.,* 91 F. Supp. 3d 339, 357–59 (E.D.N.Y. Feb. 27,
  2015) ....................................................................................................................................... 18

*Flemming v. Rendle*, 2015 WL 10529783, at *2 (N.D.N.Y. Aug. 13, 2015) ............................... 5

*Grasso v. Forrest Edward Employment Servs.*, 2002 WL 989528, at *9 (S.D.N.Y.
  May 15, 2002)......................................................................................................................... 18

*Hugee v. SJC Grp., Inc.*, 2013 WL 4399226, at *4 (S.D.N.Y. August 14, 2013) .......................... 4

*Jacobsen v. New York City Health & Hosps. Corp.,* 2013 WL 4565037, at *7–8
  (S.D.N.Y. Aug. 28, 2013) ...................................................................................................... 18

*Jean-Louis v. Metro. Cable Commc'ns, Inc.,* 838 F. Supp. 2d 111, 124 (S.D.N.Y.
  Sept. 30, 2011) ......................................................................................................................... 6

*Johnson v. Equinox Holdings, Inc.,* 2014 WL 3058438 at *3 (S.D.N.Y. July 2,
  2014) ....................................................................................................................................... 16

*Lusk v. Serve U Brands, Inc.*, 2018 WL 826857, at *2 (W.D.N.Y. Feb. 12, 2018)..................... 15

*Martin v. Sprint United Mgmt. Co.,* 273 F. Supp. 3d 404 (S.D.N.Y. Sept. 27,
  2017) ....................................................................................................................................... 11

*Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) ...................................................... 20

*Sampson v. MediSys Health Network, Inc.*, 2012 WL 3027850, at *11 (E.D.N.Y.
  Feb. 9, 2012) .................................................................................................................. 5, 7, 13

*See Lundy v. Catholic Health System of Long Island*, 711 F.3d. 106, 114 (2d Cir.
  2013)........................................................................................................................................ 16

*Sethi v. Nerod*, 974 F.Supp.2d 162, 188 (E.D.N.Y. Sept. 30, 2013) .......................................... 15

*Singh v. Patel*, 2013 WL 2190152, at *2 (E.D.N.Y. May 16, 2013) ........................................... 19

*Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015).......................................................................... 3

*Tracy v. NVR, Inc.,* 667 F.Supp.2d 244, 247 (W.D.N.Y. Nov. 5, 2009) ........................................ 6

*Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. Aug. 31, 2011).............................. 22

*Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)), *aff'd*, 601 Fed.Appx. 31 (2d Cir. 2015)........................................................................................................... 21

*Zap v. Mortg. Elec. Registration Sys., Inc.*, 2016 WL 6471229, at *6–7 (N.D.N.Y. Nov. 1, 2016) ....................................................................................................................... 22

*Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003)................................................. 4

## PRELIMINARY STATEMENT

Plaintiffs have admitted that their original complaint failed to allege that Consolidated Edison Company of New York, Inc. ("Con Edison") jointly employed Plaintiffs. (*See* Dkt. No. 9). In a futile effort to salvage their claims in the face of a motion to dismiss, Plaintiffs have now cobbled together a handful of boilerplate and conclusory allegations that merely reiterate the legal definition of joint employment, without the factual support necessary to avoid dismissal. Moreover, Plaintiffs' claims fail to demonstrate, as a matter of law, that Con Edison jointly employed them when evaluated under the factors articulated by the Second Circuit in *Carter* and *Zheng*. This warrants the dismissal of all Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims against Con Edison.

Plaintiffs' inclusion of Con Edison in their broad definition of "Defendants" or their creation of an artificial entity called "Griffin Con" does not change the insufficiency of their allegations. In an effort to bolster their claims, each Named Plaintiff impermissibly attached an affidavit to the First Amended Complaint ("FAC"). Their allegations cannot be salvaged using this tactic. The Court should disregard these affidavits because they do not qualify as written instruments under Fed. R. Civ. P. 10, and are not a proper form of pleading under the Federal Rules. And as discussed in more detail below, the FAC is deficient for numerous other reasons aside from Plaintiffs' failure to establish that Con Edison jointly employed them.

## FACTS

Con Edison provides electric, gas, and steam to customers in New York City and parts of Westchester County, New York. (FAC, ¶25). Defendants Griffin Industries, LLC and Griffin Security Services (collectively, "Griffin") employed Plaintiffs. (FAC, ¶58). Flaggers typically provide traffic control services at Con Edison construction sites. Plaintiffs allege that they

earned $14 dollars per hour, and would "sign in" with Griffin to demonstrate their availability to

work. (FAC, ¶¶60, 64). The FAC is replete with claims that generally refer to "Defendants," but

contains only ten paragraphs that specifically mention Con Edison. (FAC, ¶¶47, 73-81).

**ARGUMENT**

## I.   MOTION TO DISMISS STANDARD

It is well established that in order to survive a motion to dismiss, a complaint must allege

sufficient facts, which, if accepted as true, state a claim for relief that is "plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). It is not enough to allege facts that merely

raise the "sheer possibility that a defendant has acted unlawfully," nor rely on "labels and

conclusions" or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). Rather, the complaint must allege facts that move a claim of

discrimination "across the line from conceivable to plausible." *Twombly*, 550 U. S. at 570.

Conclusory allegations of discrimination are, "not entitled to be assumed true." *Id.* at 681

(quoting *Twombly*, 550 U.S. at 554-55). A pleading that offers only "labels and conclusions" or

"a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555. Where, as here, the FAC fails to state a "plausible" claim, it should be dismissed early and

"at the point of minimum expenditure of time and money by the parties and the court."

*Twombly*, 550 U. S. at 557-58.

## II.   PLAINTIFFS' CLAIMS AGAINST CON EDISON SHOULD BE DISMISSED

### A. The Court Should Disregard Plaintiffs' Affidavits

Each Named Plaintiff attached an affidavit as an exhibit to the FAC. (Dkt. No. 21, Exs.

A-D). The Court should disregard these affidavits because they are not a proper form of

pleading and are not permissible under Fed. R. Civ. P. 10 ("Rule 10"). Rule 10(c) provides that

"[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all

2

purposes." However, Plaintiffs' affidavits are not "written instruments" because they are not documents evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement. *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015).

In *Hogan*, the Second Circuit examined the plaintiff's affidavit, which contained a "personal, narrative summary of his experiences working in the cafeteria and of the events that occurred on the day he was discharged." *Id.* The Court held that the affidavit was not a document that "evidences legal rights or duties or sets forth the legal basis for his claims and therefore does not satisfy the definition of 'written instrument.'" *Id.*

Our case presents nearly identical facts, as Plaintiffs seek to include four affidavits that contain personal narratives and summaries of their working experiences and purported termination from Griffin. (Dkt. No. 21, exhibits A-D). These affidavits do not set forth any legal rights or duties, are not "written instruments" under Rule 10, and should be ignored by the Court in considering this Motion to Dismiss.

### B. Plaintiffs Do Not Sufficiently Allege That They Were Jointly Employed By Con Edison

To determine "whether an employment relationship exists for purposes of the FLSA, [courts] must evaluate the 'economic reality' of the relationship." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir.1984). The "economic reality" test inquires "whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id.* None of the four factors alone is dispositive. *Id.*

3

The Second Circuit has held that courts must also evaluate factors that focus on "functional control over workers even in the absence of the formal control measured by the [*Carter*] factors." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003). The *Zheng* inquiry examines:

> (1) whether [the purported joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [immediate employers] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the purported joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [purported joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported joint employer].

*Id*. at 72.

The determination of whether Con Edison jointly employed Plaintiffs begins with an analysis under *Carter* "to examine the degree of formal control," if any, Con Edison exercised over Plaintiffs. *Hugee v. SJC Grp., Inc.*, 2013 WL 4399226, at *4 (S.D.N.Y. August 14, 2013). If Plaintiffs fail to sufficiently allege that Con Edison exercised "formal control" over them, the *Zheng* factors will be analyzed to determine whether or not Plaintiffs have sufficiently alleged that Con Edison exerted "functional control" over them. *Id.*; *Zheng*, 355 F.3d at 72.

### 1. As A Preliminary Matter, The Court Should Ignore Plaintiffs' Generic Allegations Against "Defendants"

The FAC makes several broad, generic allegations against "Defendants" without providing any detail regarding the conduct at issue. For example, Plaintiffs claim that "Defendants" scheduled them for work assignments and set their working hours (FAC, ¶¶59, 61, 62, 64, 65). However, Plaintiffs do not allege that Con Edison was one of the "Defendants" who scheduled them for work assignments, or took any of the other steps attributed to "Defendants."

4

Plaintiffs cannot render Con Edison a joint employer simply by slapping the label "Defendants" on the Company.

To prevent such inappropriate pleading tactics, courts in this Circuit ignore allegations that generally refer to "defendants," and the Court should do so in this case. *See Barragan-Aquino v. E. Port Excavation & Utilities Contractors, Inc.,* 2014 WL 1276234, at *2 (E.D.N.Y. Jan. 28, 2014), *report and recommendation adopted in part, rejected in part,* 2014 WL 1117269 (E.D.N.Y. Mar. 18, 2014) ("[d]isregarding the allegations that generically refer to "the defendants…"); *Sampson v. MediSys Health Network, Inc.*, 2012 WL 3027850, at *11 (E.D.N.Y. Feb. 9, 2012), *report and recommendation adopted as modified,* 2012 WL 3027838 (E.D.N.Y. July 24, 2012) ("[i]gnoring all of the plaintiffs' conclusory allegations that refer to the defendants as "joint employers…"); *Burks v. Yetman*, 1992 WL 119132, at *1 (N.D.N.Y. May 18, 1992) ("[T]he plaintiff's complaint is deficient for a number of reasons. As an initial matter, the paragraphs in the complaint generally refer to the "defendants"…[T]hese very general allegations can rarely be expected to place any of the defendants on notice of what acts are alleged, or for that matter to which specific defendants these allegations are directed."); *Flemming v. Rendle*, 2015 WL 10529783, at *2 (N.D.N.Y. Aug. 13, 2015), *report and recommendation adopted,* 2016 WL 1122072 (N.D.N.Y. Mar. 22, 2016) (recounting dismissal of claims that were "wholly conclusory" and "generally without reference to particular defendants.").

## 2. Plaintiffs Fail To Allege That Con Edison Exercised Formal Control

### *Carter Factor One: Power to hire or fire*

The FAC declares in conclusory fashion that Con Edison could hire, fire, or suspend Griffin employees. (FAC, ¶¶47, 73). This stand-alone statement cannot establish the first *Carter* factor. 735 F.2d at 12; *see also Tracy v. NVR, Inc.,* 667 F.Supp.2d 244, 247 (W.D.N.Y. Nov. 5,

2009) ("[M]ere boilerplate allegations that an individual meets the various prongs of the economic reality test...without any supporting details – essentially 'a formulaic recitations of the elements of a cause of action' – are insufficient to raise plaintiffs' right to relief 'above a speculative' level with respect to that individual's liability as an employer under the FLSA."); *Barragan-Aquino*, 2014 WL 1276234, at \*5 (holding that "plaintiffs' conclusory allegation that the Defendants had power to hire and fire the Plaintiffs...is far from sufficient to survive a motion to dismiss."). To satisfy the first *Carter* factor, Plaintiffs must assert that Con Edison actually has exercised its purported power to hire or fire them. Their failure to do so is fatal.

Plaintiffs also allege that "[c]ertain Con Edison supervisors would request specific flaggers for specific jobs." (FAC, ¶74). Even accepted as true, requesting or de-authorizing a particular contractor from performing services under a contract is not the equivalent of a hiring or firing decision. *See e.g., Jean-Louis v. Metro. Cable Commc'ns, Inc.,* 838 F. Supp. 2d 111, 124 (S.D.N.Y. Sept. 30, 2011) (holding that de-authorization of plaintiff was not equivalent to a firing decision).

Plaintiffs do state that *Griffin* and numerous individual Defendants *related to Griffin* possessed and exercised the power to hire and fire them. (FAC, ¶¶35, 37, 39, 41, 43, 45). This acknowledgement by Plaintiffs that the power to hire or fire rests with Griffin further degrades the plausibility of Plaintiffs' claim that *Con Edison* held the power to hire and fire them. *See Hugee*, 2013 WL 4399226, at \*5 (concluding that first *Carter* factor weighed against the plaintiff partly because he conceded that the primary employer had the authority to hire and fire him).

**Carter Factor Two: Supervision and control of work schedules or conditions of employment**

Plaintiffs claim that "Defendants" scheduled them for work assignments and set their working hours (FAC, ¶¶6, 59). As discussed above, this generic claim – which does not allege

6

that *Con Edison* supervised or controlled Plaintiffs' schedules or employment conditions –

should be ignored. *Barragan-Aquino*, 2014 WL 1276234, at *5; *Sampson v. MediSys Health*

*Network, Inc.*, 2012 WL 3027850, at *11.  It is also implausible that the term "Defendants" here

encompasses Con Edison, as Plaintiffs acknowledge that they received their work assignments

from Griffin upon arrival at Griffin's facilities each morning.  (FAC, ¶¶6, 59).  By Plaintiffs'

own description, it is Griffin, and not Con Edison, that directed them where to go on any

particular day. *Id.*

      Even accepting Plaintiffs' allegations as true, their claims do not establish, as a matter of

law, that Con Edison exercised a level of control necessary to tip this factor in Plaintiffs' favor.

*See Hugee*, 2013 WL 4399226, at *5 (granting motion to dismiss and holding that requirement to

report arrival and departure to putative joint employer, and fill out their timesheets, did not

constitute supervision and control under *Carter* or *Zheng*); *Diaz v. Consortium for Worker Educ.,*

*Inc.*, 2010 WL 3910280, at *4 (S.D.N.Y. Sept. 28, 2010) (granting motion to dismiss and

concluding that no direct supervision existed where the alleged joint employer required contract

workers to report to certain work locations).

### *Carter Factor Three: Determination of the rate and method of payment*

      The FAC contains sparse details regarding who determined the rate and method of

Plaintiffs' pay.  Plaintiffs note that, "Griffin employees were paid Twelve ($12) to Fourteen

($14) dollars per hour," (FAC, ¶6) and "Defendants paid [Plaintiffs] Fourteen Dollars ($14) per

hour." (FAC, ¶64).   Once again, these generic allegations against "Defendants" are insufficient

to state a cause of action and should be ignored. *Barragan-Aquino*, 2014 WL 1276234, at *5;

*Sampson v. MediSys Health Network, Inc.*, 2012 WL 3027850, at *11.

7

These allegations also fail to specify who *determined* that rate of pay, which is the critical inquiry under this factor. *Carter*, 735 F.2d at 12.  And such formulaic allegations are legally insufficient to sustain a cause of action. *See Diaz*, 2010 WL 3910280 at *4 (finding allegations that the alleged joint employer "directly or indirectly control[ed] the method, rate, and time of payment" as conclusory an insufficient to survive a motion to dismiss).

The only allegation regarding the method of payment states that, "Griffin paychecks were often returned to employees from banks or cash checking facilities because the Griffin bank account lacked sufficient funds to pay employees." (FAC, ¶15).  These claims make no mention on Con Edison, and demonstrate that Griffin alone paid Plaintiffs.  For each of these reasons, the third *Carter* factor tips toward Con Edison.  735 F.2d at 12.

### Carter Factor Four: Maintenance of employment records

"Employment records" are personnel files, time sheets, pay stubs, and government employment forms. *Hugee*, 2013 WL 4399226, at *7.  The FAC mentions Con Edison's possession of employment records just once: "Con Edison would receive each employee's time sheet daily." (FAC, ¶78).  This allegation falls short of the requisite pleading standard, as Plaintiffs do not allege the purpose of the receipt of these time sheets, do not claim that Con Edison signed off on these time sheets, and do not provide any context regarding the time sheets. *See Hugee*, 2013 WL 4399226, at *7 (holding that plaintiff "failed to allege any facts suggesting that the company maintained these records beyond quality control purposes" where the company required plaintiff to fill out timesheets); *see also Jean*-Louis, 838 F. Supp. 2d at 130 (noting that the employer received "lists of technicians and their technician numbers – numbers which also appeared on work orders that [technicians] submitted after completing jobs" but concluding that such records do not satisfy the fourth *Carter* factor or otherwise demonstrate formal control over

8

employees). Indeed, Plaintiffs go out of their way to accuse Con Edison of *failing* to maintain
proper employment records under NYLL §195. (FAC, ¶¶69, 70). This undercuts the plausibility
of Plaintiffs' argument that Con Edison maintained their employment records.

For the reasons discussed above, each of the four *Carter* factors weigh against a finding
that Con Edison jointly employed Plaintiffs. *Carter*, 735 F.2d at 12.

       3.  Plaintiffs Fail To Allege That Con Edison Exercised Functional Control

### *Zheng Factor One: Use of Con Edison's premises & equipment*

The first *Zheng* factor examines whether Con Edison's premises and equipment were
used for Plaintiffs' work. *Zheng*, 355 F.3d at 72. The FAC makes a single reference to this
issue: "Defendants scheduled Plaintiffs to appear at Griffin for work assignments…but would
not start the pay clock until Plaintiffs…appeared at Con Edison's worksites." (FAC, ¶59).
Plaintiffs do not allege that flaggers ever performed work at a Con Edison office location or
permanent facility. And Con Edison's construction sites, which changed location often, do not
equate to a "premises" under *Zheng*. 355 F.3d at 72 (equating a premises to an "in house" unit
that is part of a company's fixed facility); *see also Hugee*, 2013 WL 4399226, at *8 (concluding
that a security guard who worked at various assigned locations in Manhattan did not work at the
putative joint employer's premises).

Plaintiffs do not allege that they used any of Con Edison's equipment to perform their
jobs. Rather, Plaintiffs claim that Defendants (presumably Griffin) forced them to purchase their
*own* equipment before employment could begin. (FAC, ¶13). By asserting that they purchased
their own equipment, Plaintiffs concede that they did not use Con Edison's equipment. For these
reasons, the first *Zheng* factor weighs against a finding of a joint employment relationship.

9

### *Zheng Factor Two: Shifting of business*

The second *Zheng* factor examines whether Griffin could or did shift as a unit from one putative joint employer to another. *Zheng*, 355 F.3d at 72. This District Court's decision in *Hugee v. SJD Group, Inc.* is instructive regarding this factor. 2013 WL 4399226, at \*9.

In *Hugee*, the court evaluated whether a contractor that allegedly performed nearly all of its work for a single company was a joint employer with that company. *Id.* In finding that the second *Zheng* factor weighed against joint employment, the court noted that, "unless [p]laintiff asserts facts indicating that the [primary employer's business] *could not* shift to another putative joint employer, the second *Zheng* factor is not satisfied." (emphasis added). *Id.* Here, the FAC is similarly silent on whether Griffin could or could not shift its business to another employer or assign its employees to work at work sites of a company other than Con Edison. This silence weighs against a finding that Con Edison jointly employed Plaintiffs. *Zheng*, 355 F.3d at 72; *Hugee*, 2013 WL 4399226, at \*9.

Plaintiffs' claim that Griffin "ran a Con Edison flagger site business" and that "Con Edison is Griffin's sole employer" (FAC, ¶¶54, 81) also fails to tip the scale in their favor. Even accepting these demonstrably false claims as true, "the absence of a broad client base…is not 'anything close to a perfect proxy for joint employment because it is perfectly consistent with a legitimate subcontracting relationship.'" *Hugee*, 2013 WL 4399226, at \*9. Indeed, it strains credulity that Griffin could not shift flaggers from a Con Edison project to any other construction project in Westchester County or elsewhere. The traffic control work performed by flaggers is not specific to Con Edison and is easily transferrable. *See Jean-Louis*, 838 F.Supp.2d at 132-33 (holding that the second *Zheng* factor weighed against a finding of joint employment where the immediate employer is able to contract with other companies "at any time.").

10

### *Zheng Factor Three: Whether Plaintiffs have a discrete line job*

The third *Zheng* factor examines whether Plaintiffs performed a discrete line job that was integral to Con Edison's process of production. *Zheng*, 355 F.3d at 72. On this point, the FAC alleges that Plaintiffs "performed an essential function for Con Ed. If flaggers weren't available to protect the general public and Con Ed electrical or gas workers by maintaining orderly traffic patterns, needless deaths would occur." (FAC, ¶47).

While flaggers certainly play an important role on Con Edison job sites in terms of maintaining safe conditions, this function is legally insufficient to justify a finding of joint employment. Courts have noted that this factor "might apply with somewhat less vigor where…the parties are engaged in providing a service rather than manufacturing a product." *Hugee*, 2013 WL 4399226, at \*9, *quoting Jean-Louis,* 838 F.Supp.2d at 132-33.

In *Hugee*, the court held that a security guard did not perform a discrete line job. *Hugee*, 2013 WL 4399226, at \*9. The same conclusion is appropriate here. Plaintiffs provided a similar safety service – traffic control – and did not perform the actual construction or utility work handled by Con Edison or one of its construction contractors. *Id.* The complimentary service provided by flaggers is not equivalent under the law to a "discrete line function" integral to Con Edison's process of production. *See Zheng,* 355 F.3d at 73 (narrowly interpreting which jobs are "integral" under this factor and highlighting the difference between those "discrete line jobs" that are typically performed by employees, and other jobs that are amendable to being performed by contract workers without creating a joint employment relationship); *see also Martin v. Sprint United Mgmt. Co.,* 273 F. Supp. 3d 404 (S.D.N.Y. Sept. 27, 2017) (concluding that field agents who solicit customers do not occupy integral line jobs because they merely provide Sprint with a service).

11

### *Zheng Factor Four: Whether the contractors are mutually interchangeable*

The fourth *Zheng* factor assesses whether responsibility under the contract between Griffin and Con Edison could pass to another subcontractor without material changes. *Zheng*, 355 F.3d at 72. In other words, a joint employment relationship is more likely if the same flaggers performed work for Con Edison regardless of whether Con Edison utilized Griffin or some other provider. *Zheng*, 355 F.3d at 74. Here, the FAC does not allege any facts indicating that Plaintiffs could have maintained a relationship with Con Edison even if Griffin did not employ them. Absent any such claims, the fourth *Zheng* factor weighs in favor of Con Edison.

### *Zheng Factor Five: Supervision of work*

The fifth *Zheng* factor evaluates the degree to which Con Edison supervised the work performed by Griffin flaggers. *Zheng*, 355 F.3d at 74. This factor "can be misinterpreted to encompass run-of-the-mill subcontracting relationships." *Id*. Supervision justifies a joint employer relationship "only if it demonstrates effective control of the terms and conditions of the plaintiff's employment." *Id*. at 75. To illustrate this point, *Zheng* noted that, "[t]he most successful outsourcers find it absolutely essential to have both close personal contact and rapport at the floor level and political clout and understanding with the supplier's top management," but such involvement does not create a joint employment relationship. *Id.*

In the instant case, Plaintiffs have failed to sufficiently allege that Con Edison supervised their work. The fact that Griffin time sheets contained Con Edison's name (FAC, ¶75-77) or that Con Edison received Plaintiffs' time sheet (FAC, ¶78) does not describe any Con Edison supervision over Plaintiffs. And Plaintiffs' generic allegation that "Defendants" scheduled Plaintiffs for work assignments and set their working hours (FAC, ¶¶6, 59) should be ignored

12

because it fails to attribute such activities specifically to Con Edison. *Barragan-Aquino*, 2014 WL 1276234, at *5; *Sampson v. MediSys Health Network, Inc.*, 2012 WL 3027850, at *11.

Even if the Court attributes these claims to Con Edison, they still fail as a matter of law. Several decisions from this Circuit are instructive regarding this *Zheng* factor. In *Hugee*, the plaintiff was required to report his arrival and departure times to the putative joint employer, and fill out timesheets for the putative joint employer. 2013 WL 4399226, at *5. The court held that "these measures of timekeeping do not constitute the functional control required by the *Zheng* inquiry." *Id.*

In *Gisomme v. HealthEx Corp.,* the putative joint employer sought to dismiss the complaint, arguing that the plaintiffs failed to demonstrate formal or functional control. 2014 WL 2041824, at *3 (E.D.N.Y. May 15, 2014). In response, the plaintiffs argued that the putative joint employer was "actively involved in day-to-day operations, exercising significant managerial control over their operations, policies, practices, and procedure [and] had the power to hire, and terminate employees, control work schedules and conditions of employment, and set wages." *Id.* at 4. The Court found these allegations to be "conclusory," and dismissed the complaint after finding that, "without specifics, plaintiffs' allegations are not sufficient to establish…formal control or functional control over plaintiffs." *Id.*

The allegations in this case are less specific that those seen in *Gisomme*. Plaintiffs do not allege any significant managerial control over Griffin flaggers, and only superficially claim that "Defendants" had the power to hire, fire, set their schedules, and establish wages. (FAC, ¶¶47, 59). Under the *Gisomme* analysis, such allegations fall short of the standards necessary to plausibly allege a joint employment relationship. 2014 WL 2041824, at *4.

13

Finally, in *Diaz v. Consortium for Worker Educ.*, the court reviewed the alleged supervision and control of a putative joint employer, which included an exhaustive recitation of examples of control.  2010 WL 3910280 at *3.  Despite this laundry list of allegations, the *Diaz* court dismissed the complaint and concluded that, "even accepting all of [p]laintiff's allegations as true, the extent of involvement and operational control by CWE over [p]laintiff's conditions of employment were minimal….[T]he complaint contains no facts that indicate that CWE had any direct role in managing the plaintiffs…the factual allegations…reflect only a global view of two corporations and do not show any direct supervision."  *Id.* at *4.

The instant allegations pale in comparison to those made in *Diaz*.  Plaintiffs do not identify any specific interactions between Con Edison employees and flaggers that demonstrate control or supervision.  Plaintiffs also do not allege that Con Edison had active, day-to-day involvement in the performance of their work, such as providing training or directing Plaintiffs to perform their duties in a certain manner.  The FAC contains fewer and more vague allegations of joint employment compared to those "minimal" levels that the *Diaz* court found insufficient. *Id.*  For the same reasons, Plaintiffs fail to establish that Con Edison supervised the work of Griffin flaggers, and this factor should weigh against the existence of a joint employment relationship.  *Zheng*, 355 F.3d at 74.

### *Zheng Factor Six: Whether Plaintiffs worked exclusively or predominantly for Con Edison*

The sixth *Zheng* factor evaluates whether Plaintiffs performed services exclusively or predominantly for Con Edison.  *Zheng*, 355 F.3d at 72.  The FAC contains allegations that satisfy this factor.  (FAC, ¶81).  While this factor may tip in Plaintiffs' direction, it is far outweighed by the other factors discussed above indicating that Con Edison did not jointly employ Plaintiffs.

14

*See e.g., Hugee*, 2013 WL 4399226, at \*10 (dismissing complaint even where sixth *Zheng* factor tipped towards a finding of joint employment).

> ### 4.   Plaintiffs' FLSA and NYLL Claims Should Be Dismissed

Even accepting their allegations as true, Plaintiffs have failed to plausibly allege that Con Edison jointly employed them under the *Carter* or *Zheng* standards.  Plaintiffs' generic claims against all "Defendants" and "Griffin Con" are conclusory and vague.  And the few allegations that specifically reference Con Edison fall short of the requisite pleading standards. Accordingly, Con Edison does not, as a matter of law, meet the definition of "employer" under the FLSA and NYLL and all claims against Con Edison under those statutes should be dismissed.  *Hugee*, 2013 WL 4399226, at \*3; *see also Sethi v. Nerod*, 974 F.Supp.2d 162, 188 (E.D.N.Y. Sept. 30, 2013) (interpreting the definition of 'employer' under the NYLL coextensively with that used by the FLSA).

> ## C.   In Addition To Plaintiffs' Failure To Establish That Con Edison Jointly Employed Them, Plaintiffs' Claims Are Deficient For Other Reasons

> ### 1.   Plaintiffs Did Not Adequately Plead Their Minimum Wage Claims

Even accepting Plaintiffs' allegations as true, they have failed to plausibly allege minimum wage violations under the FLSA or NYLL.  "In order to state a claim for a minimum wage violation under the FLSA, a complaint must allege that, during at least one particular week, the average of the Plaintiffs' wages was less than the federal minimum wage." *Lusk v. Serve U Brands, Inc.*, 2018 WL 826857, at \*2 (W.D.N.Y. Feb. 12, 2018).

Here, Plaintiffs fail to allege the specific number of hours they worked, the amount of wages paid in any particular week, or that they were paid less than the federal or state minimum wage for any given week.  *Lusk*, 2018 WL 826857, at 2.  Indeed, Plaintiffs admit that they were

paid $14 per hour (FAC, ¶64), which is greater than the applicable federal and state minimum wage during the relevant time period. *See* 29 U.S.C. § 206.[1]

The fact that Plaintiffs allege off-the-clock hours (FAC, ¶59) does not change this conclusion, as the FAC fails to provide sufficient information for the Court to determine their rate of pay for any given week. *Lusk*, 2018 WL 826857, at 2. Plaintiffs do not quantify how many off-the-clock hours they had to work during any particular week other than broadly saying they were "shortchanged…dozens of hours per week" and "generally" worked more than 40 hours per week. (FAC, ¶¶6, 59, 61).

Plaintiffs' allegation of payment for only sixty hours in an eighty-hour week, (FAC, ¶63) is illustrative of this point. Even accepted as true, Plaintiffs would earn $10.50 per hour[2], an amount above the minimum wage. *See Johnson v. Equinox Holdings, Inc.,* 2014 WL 3058438 at *3 (S.D.N.Y. July 2, 2014) (rejecting plaintiffs' argument that failure to compensate for off-the-clock hours resulted in a minimum-wage violation when average hourly wage did not fall below the minimum wage). Accordingly, Plaintiffs' minimum wage violations – which do not allow the Court to determine their rate of pay for any week – lack the specificity necessary to sustain a cause of action and must be dismissed. *Lusk*, 2018 WL 826857, at 2.

## 2.   Plaintiffs Did Not Adequately Plead Their Overtime Claims

Plaintiffs' overtime claims under the FLSA and NYLL must also be dismissed, as they have not plausibly alleged that they worked overtime without proper compensation. *See Lundy v. Catholic Health System of Long Island*, 711 F.3d. 106, 114 (2d Cir. 2013) ("[I]n order to state

---

[1] History of the General Hourly Minimum Wage in New York State, *available at* https://www.labor.ny.gov/stats/minimum_wage.shtm

[2] 60 hours times $14.00 divided by 80 hours.

16

a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours.").

The Second Circuit decision in *DeJesus v. HR Management Services, LLC* illustrates the deficiencies of the FAC. 726 F.3d 85 (2d Cir. 2013). In *DeJesus,* the plaintiff alleged that in "some or all weeks she worked more than forty hours a week without being paid 1.5 times her rate of compensations." 726 F.3d at 89. The Court viewed this as "no more than rephrasing the [FLSA]" and held that the plaintiff "at least was required to do more than repeat the language of the statute." *Id.*

Here, Plaintiffs similarly claim that they "generally…work[ed] more than 40 hours per workweek." (FAC, ¶61). Plaintiffs fail to articulate any given workweek during which they worked more than forty hours per week, or identify the number of hours over forty that they worked in a week. Plaintiffs' alleged example in which they might work eighty hours per week but receive pay for only sixty hours  (FAC, ¶63), is unspecific to any particular week and does not assert that any particular employee actually worked eighty hours in a given week but was paid only for sixty hours. Even in the light most favorable to Plaintiffs, their claims of "generally" working over forty hours per week – without any specifics or elaboration – are insufficient under the standard established in *Lundy* and *DeJesus*, and warrants dismissal.

### 3. OSHA Does Not Confer A Private Right Of Action

Plaintiffs claim that Con Edison violated OSHA by not providing meal or restroom breaks and by forcing Plaintiffs to pay one hundred and fifty dollars for "non-OSHA conforming, faulty, non-reflective, safety equipment before employment could begin." (FAC, ¶¶5, 13, 17). Plaintiffs' OSHA claim must be dismissed because employees do not have a private right of action under OSHA. *See Jacobsen v. New York City Health & Hosps. Corp.,*

17

2013 WL 4565037, at *7–8 (S.D.N.Y. Aug. 28, 2013); *Grasso v. Forrest Edward Employment Servs.*, 2002 WL 989528, at *9 (S.D.N.Y. May 15, 2002).

    4.   Plaintiffs' Prevailing Wage Claims Are Deficient And Should Be Dismissed

Plaintiffs allege that they were not paid prevailing wages for flaggers in Westchester County, in violation of NYLL §220.  (FAC, ¶¶6, 134-140).  However, the FAC does not allege any facts suggesting that the flagger work performed by Plaintiffs was for a public works project that might entitle them to prevailing wages, or that Con Edison breached a contract that might entitle them to the prevailing wage.  *See generally* NYLL § 220(2) (defining public works as contracts with states, municipalities, and other similar entities); NYLL § 220(3) (requiring payment of prevailing wages "upon such public works" covered by NYLL § 220(2)).

Moreover, utilities are only required to pay prevailing wages where a permit requiring such payment is mandated under local law.  *See* NYLL § 220(3-a)(e).  Plaintiffs have not alleged that any project they worked on took place in a Westchester municipality that required a permit.[3] A plain reading of § 220(3-a)(e) also confirms that utilities are not covered by the prevailing wage laws except to the limited extent set forth in § 220(3-a)(e), because if they were, § 220(3-a)(e) would be superfluous.  Absent any plausible claim that Plaintiffs were entitled to prevailing wages, their allegation cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

Notwithstanding Plaintiffs' failure to allege that they were entitled to prevailing wages, even if they were, they do not have a private right of action because they failed to exhaust their administrative remedies.  Before bringing a claim to recover wages at the prevailing wage rate pursuant to NYLL § 220, an administrative complaint must be filed.  NYLL § 220(8); *Ethelberth v. Choice Sec. Co.,* 91 F. Supp. 3d 339, 357–59 (E.D.N.Y. Feb. 27, 2015).

---

[3] There is no prevailing wage rate for flaggers in New York City.

Here, the FAC does not contain a single reference to the filing of an administrative complaint or otherwise demonstrate that Plaintiffs utilized the administrative procedure under NYLL § 220(8).  Accordingly, Plaintiffs claims under NYLL § 220 must be dismissed for failure to exhaust their administrative remedies prior to bringing suit.

### 5. Plaintiffs' Spread-of-Hours Claims Are Legally Deficient

To sustain a spread-of-hours claim, Plaintiffs must allege at least "a single day on which [they] worked more than 10 hours" for which they did not receive spread-of-hours pay.  *Azeez v. Ramaiah*, 2015 WL 1637871, at *5 (S.D.N.Y. April 9, 2015).  However, employees who earned more than the minimum wage are not entitled to spread-of-hours pay.  *Singh v. Patel*, 2013 WL 2190152, at *2 (E.D.N.Y. May 16, 2013).

The FAC generally claims that "Plaintiffs and class members regularly worked more than 10 hours in a workday" and that all Defendants failed to pay the spread-of-hours pay "when Plaintiffs worked days that began and ended more than ten (10) hours apart in a single day." (FAC, ¶¶14, 115-117, 160-161).  However, Plaintiffs do not specify a single day on which they worked more than ten hours that might entitle them to the spread-of-hours pay.  This warrants the dismissal of their claims.  *Azeez*, 2015 WL 1637871, at *5.  And as noted above, even accepting Plaintiffs' claims as true, they admit that they were paid at least $14 per hour (FAC, ¶60), an amount above the New York minimum wage, which means they were not even entitled to spread-of-hours pay as a matter of law.  *Singh* 2013 WL 2190152, at *2.

### 6. Plaintiffs' Claims Under NYLL § 195 Should Be Dismissed

Plaintiffs allege that "Defendants failed to provide Plaintiff and the Class Members with the employment notices required by NYLL § 195 (1), (3), (4), and (6).  NYLL § 195 only applies to employers.  (FAC, ¶¶69-70, 122-128).  Because Plaintiffs cannot establish that Con Edison jointly employed Plaintiffs, the dismissal of each of these claims is proper.

19

Plaintiffs' allegations under NYLL § 195 (4) and (6) are doubly deficient as a matter of law. No independent cause of action exists for violations of New York's recordkeeping requirements, which requires the dismissal of Plaintiffs' NYLL § 195 (4) claim. *See In re Domino's Pizza Inc.*, 2018 WL 1587593, at *6–7 (S.D.N.Y. Mar. 27, 2018). And Plaintiffs have failed to allege any facts regarding the termination of their employment that could render their claim under NYLL § 195 (6) actionable.

### 7. Plaintiffs Have Not Plausibly Alleged An FLSA Retaliation Claim

The FAC appears to assert a class-wide FLSA retaliation claim. (FAC, ¶18). This allegation is legally insufficient for numerous reasons. First, while the FAC discusses this claim in the preliminary statement, Plaintiffs do not actually assert a cause of action alleging FLSA retaliation. (*See generally* FAC, ¶¶ 96-170).

Second, the FAC is internally inconsistent. In paragraph 18, Plaintiffs allege that, "none of the plaintiffs in the instant matter remain gainfully employed by Griffin Con," but in paragraphs 26, 28, and 30, Plaintiffs allege that Named Plaintiffs Morris, Dale, and Jones are all currently employed by Defendants. This inconsistency is fatal to Plaintiffs retaliation claims, as the alleged adverse action – termination of employment – is not plausible on the face of the FAC. *Twombly*, 550 U.S. at 570.

Third, the FAC fails to allege any facts that, even if accepted as true, could sustain a FLSA retaliation claim, especially against Con Edison. In order to plausibly allege an FLSA retaliation claim, Plaintiffs must plead "(1) participation in protected activity known to the defendant ...; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). Here, Plaintiffs do not actually allege a protected activity in which they participated in, do not identify with any specificity an adverse action that

20

disadvantaged them, and do not describe any causal connection between the activity and adverse action.  Moreover, even if they could establish such elements as to Griffin, there is no allegation that Con Edison had knowledge of whatever protecated activity they may have taken, and, therefore, a claim of retaliation cannot proceed against Con Edison.  Plaintiffs' inconsistent and conclusory allegations cannot meet the required pleading standards and must be dismissed.  *Id.*; *Iqbal*, 556 U.S. at 678.

> 8.  <u>Plaintiffs' Allegations Under The General Business Law Are Fatally Flawed</u>

To state a claim under section 349 of the General Business Law, a complaint must allege that, "(1) the defendant's conduct was consumer-oriented; (2) the defendant engaged in a materially deceptive and misleading act; and (3) plaintiff was injured by the defendant's act." *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 673 (S.D.N.Y. Dec. 22, 2000).  Here, Plaintiffs fail to allege that any of the Defendants' conduct was consumer-oriented or otherwise directed against the "consuming public" and their claim should be dismissed. *See In re Domino's Pizza Inc.*, 2018 WL 1587593, at *8–9 (S.D.N.Y. Mar. 27, 2018).

To the extent that Plaintiffs allege independent causes of action for fraud in the inducement or fraud in the concealment, those claims should be dismissed as well.  Under New York law, to state a claim for fraud in the inducement, "a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)), *aff'd*, 601 Fed.Appx. 31 (2d Cir. 2015).  The FAC contains no facts or allegations that might plausibly satisfy these requirements, especially as to Con Edison.

To maintain a common law fraud claim in New York, a plaintiff must allege that, "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff

21

thereby, (3) the plaintiff reasonably relied upon the misrepresentation, and (4) the plaintiff suffered damages as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995). "A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. Aug. 31, 2011). Con Edison had no duty to disclose to Plaintiffs any information about the union they selected to be their collective bargaining representative. The FAC makes one generalized allegation that Defendants defrauded them (FAC, ¶11), but fails to specify any of the required elements of such a claim. Accordingly, this allegation must be dismissed as a matter of law. *See Zap v. Mortg. Elec. Registration Sys., Inc.*, 2016 WL 6471229, at *6–7 (N.D.N.Y. Nov. 1, 2016) (dismissing fraud claims based on conclusory allegations).

### 9. Plaintiffs Have Not Plausibly Alleged An Emotional Distress Claim

Plaintiffs' cause of action for "Emotional Distress" appears to be connected to the alleged FLSA violations. (FAC, ¶ 164-167). Emotional distress damages are not permitted for minimum wage and overtime violations under the FLSA. *See* 29 U.S.C. § 216. Additionally, the FAC pleads no facts that plausibly allege that Plaintiffs are entitled to "emotional distress" damages due to FLSA retaliation. *Iqbal*, 556 U.S. at 678. Finally, to the extent that Plaintiffs seek to plead an independent claim for intentional infliction of emotional distress, such a claim must be dismissed as a matter of law because the FAC lacks any facts that could plausibly meet the elements of this cause of action. *Id.*[4]

---

[4] Plaintiffs' Eighth Cause of Action (illegal kickbacks), Ninth Cause of Action (workers' compensation), and Tenth Cause of Action (violation of LMRA reporting obligations) do not allege any wrongdoing on the part of Con Edison. (FAC, ¶¶7, 15, 144-158). Even if they are interpreted to include Con Edison, the allegations must be dismissed because Con Edison did not employ Plaintiffs.

22

<u>CONCLUSION</u>

The FAC fails to demonstrate, as a matter of law, that Con Edison jointly employed

Plaintiffs.  Separate and aside from this, the FAC is legally deficient for numerous other reasons.

For each of the reasons discussed above, all allegations against Con Edison should be dismissed

with prejudice.

Dated: New York, New York
      May 11, 2018

                                    STEVEN M. SCOTTI
                                    Attorney for Consolidated Edison Company
                                    of New York, Inc.
                                    4 Irving Place, Room 1800
                                    New York, New York 10003

                                    By:  /s/ *Adam J. Smiley*
                                         Adam J. Smiley
                                         (212) 460-3990

## CERTIFICATION OF WORD COUNT AND FORMATTING

I, Adam J. Smiley, hereby certify that this Memorandum of Law In Support of Con Edison's Motion to Dismiss contains 6,921 words and complies with the formatting rules in Your Honor's Individual Practices.

/s/ *Adam J. Smiley*

Adam J. Smiley