UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RAVEN MOSES, et al.,

                       Plaintiffs,

         -against-

GRIFFIN INDUSTRIES, LLC, et al.

                      Defendants.

-------------------------------------------------------------x

No. 18-cv-1200 (ALC) (OTW)

**OPINION & ORDER**

**ONA T. WANG, United States Magistrate Judge:**

Plaintiffs Raven Moses, Staraisha Morris, Dwayne Dale, Ismaiyl Jonse, Ayanna Beacham, Andre Murray, Victor Ballast, and Luis Simone, individually and on behalf of others similarly situated, in the consolidated action *Moses, et al. v. Griffin Industries et al.* allege that Defendants owe unpaid and overtime wages pursuant to the Fair Labor Standards Act (the "FLSA") and the New York Labor Laws ("NYLL"). (ECF 160, the Consolidated Amended Complaint "CAC"). Before the Court is Plaintiffs' Motion for Conditional Collective Certification. (ECF 114). For the reasons that follow, the Motion is **GRANTED** with the conditions set out below.

    **I. Background**

        **A. Facts**

The following facts are taken from the CAC, ECF 160.[1]

Plaintiffs allege that Griffin Industries, LLC and Griffin Security Services (collectively, "Griffin") provided construction flaggers for Consolidated Edison Company of New York, Inc.

---

[1] *Moses* was filed in February 2018.

("Con Ed"). Defendants Michael Smith, Winston Smith, Andrew Muñiz (a/k/a "Nuñez"), and Aaron Muñiz (collectively, the "Individual Defendants," and with Griffin, the "Griffin Defendants") are allegedly the owners and/or operators of Griffin and "were in charge of determining Griffin's policies with respect to payroll and otherwise running the business of Griffin." CAC ¶¶ 30-35; 59-60. Plaintiffs are construction flaggers employed by Griffin,[2] who allege that the Individual Defendants, Griffin, and Con Ed are all joint employers.[3]

Plaintiffs allege that, until June 2018, Griffin entered into subcontractor or prime contractor contracts with Con Ed to provide flagging work or to furnish labor, material, and equipment at Con Ed sites. CAC ¶ 66. Griffin allegedly contracts exclusively[4] with Con Ed to provide flaggers. CAC ¶ 76. These contracts purportedly set the wages to be paid to Plaintiffs. CAC ¶¶ 67-73. Con Ed purportedly compensated Griffin for the flagging services at the prevailing union wage rates. CAC ¶ 75. Plaintiffs received their payroll checks from Griffin's "office employees." CAC ¶ 194.

Around May or June 2018, Con Ed terminated its contract with Griffin after another company had submitted a lower bid to Con Ed. CAC ¶¶ 204-06. At that time, Griffin employed approximately 250 flaggers. CAC ¶ 205.

Plaintiffs allege the flaggers "worked under the sole supervision of a Con Ed supervisor, who assigned them to specific corners or sections of roadways and told them which streets to close and where to erect . . . signs and other signage." CAC ¶¶ 77-78. The flaggers also worked

---

[2] Plaintiff Simone additionally worked for Griffin as a security guard.
[3] In the CAC, Plaintiffs often do not distinguish between the various Defendants, but, rather, refer to the Defendants in the collective. *See, e.g.*, CAC ¶ 2 ("Defendants paid Plaintiffs an hourly rate.").
[4] Plaintiffs do not allege that Con Ed contracts exclusively with Griffin.

2

alongside other Con Ed employees, not employed by Griffin, such as mechanics and manual workers. CAC ¶ 79. The Con Ed supervisors also "instructed Griffin employees what times to fill in on their time sheets, which had to be signed by the Con Ed supervisors on the site, as well as what time to take a break." CAC ¶ 77. Con Ed "routinely retained copies" of the time sheets. CAC ¶ 77.

Con Ed purportedly "routinely informed the Griffin Defendants which employees they did and did not want to work on specific job site[s] or with a specific crew." CAC ¶ 80. Plaintiffs Raven Moses and Staraisha Morris were allegedly "terminated at the direct request of a Con Ed supervisor." CAC ¶ 81; *see also* ECF 56-7 Moses Affidavit ¶ ¶ 30-36; ECF 56-8 Morris Affidavit ¶ 19. Con Ed purportedly monitored and supervised the work performed by Plaintiffs. CAC ¶¶ 82-85.

Defendants allegedly did not pay Plaintiffs prevailing wages, supplemental benefits, or "wages for time spent traveling between job sites and [Griffin's] office or for time spent waiting for job assignments, picking up their biweekly payments and picking up and returning mandatory paperwork and equipment." CAC ¶¶ 2, 97-170, 173-206.

Plaintiffs Dale and Jones allege retaliation under FLSA § 215(a)3() and NYLL § 215 on the grounds that "Defendants took adverse employment action against" them by terminating them after they filed the instant complaint. CAC ¶ 173.

II. **Procedural History**

Plaintiffs Moses, Morris, Dale, Jones, Beacham, and Murray filed *Moses v. Griffin, et al.*, No. 18-cv-1200 in February 2018. (ECF 1). Plaintiffs amended the *Moses* complaint in April 2018 and August 2018. (ECF 24, 56). In March 2019, the District Court found that Plaintiffs "have

3

plausibly alleged joint employment" between Griffin and Con Ed, but dismissed the fraud and New York Insurance Law violations claims. (ECF 66). On May 24, 2019, *Moses* was referred to this Court for general pretrial supervision. (ECF 74).

Plaintiffs Ballast and Simone filed *Ballast v. Griffin Industries, LLC, et al.*, No. 20-cv-3108 in April 2020. *Moses* and *Ballast* were consolidated on July 22, 2020. (ECF 135). On July 22, 2020, I so-ordered the consolidation, and both actions are under the master file No. 18-cv-1200. (ECF 158).

The *Moses* Plaintiffs filed the instant motion and a pre-motion conference for the same in February 2020. (ECF 114). In March 2020, the *Moses* Plaintiffs indicated that they intended to rely on the February 2020 briefing. (ECF 123). Both Griffin and Con Ed opposed the motion in May 2020. (ECF 137, 138, 150, 154). After consolidation, the *Ballast* Plaintiffs joined the *Moses* Plaintiffs' motion. (ECF 140).

**II. Legal Standard**

The FLSA allows an employee to bring an action against an employer on behalf of themselves and other employees similarly situated. *See* 29 U.S.C. § 216(b). Where a plaintiff seeks to bring a claim on behalf of similarly situated employees, courts have discretion to implement Section 216(b) "'by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (citations omitted). Collective certification under the FLSA involves two steps: (1) determining whether there exist individuals similarly situated to the named plaintiff who have also been the victim of FLSA violations such that notice of the suit should be circulated and (2) after providing notice to potential class members, determining whether any

4

new plaintiffs who opted-in to the suit are in fact "similarly situated" to the named plaintiff. *See id*. at 555.

At the first stage of collective certification, the Court requires only a "modest factual showing that [the named plaintiffs] and others together were victims of a common policy or plan that violated the law." *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citing *Myers*, 624 F.2d at 555). "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). Instead, the Court looks to pleadings and submitted affidavits to determine whether there are other potential class members who are similarly situated to the named plaintiff(s). *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 560 (S.D.N.Y. 2015). Although this is a fairly low evidentiary standard, the plaintiff cannot merely rely on "unsupported assertions." *See Myers*, 624 F.3d at 555; *Morales v. Plantworks, Inc.*, No. 05-cv-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) ("conclusory allegation" in complaint that employees are similarly situated was insufficient). The burden at the initial stage is "limited, in part, because the determination that the parties are similarly situated is merely a preliminary one' and may be modified or reversed at the second stage." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)).

At the second stage, the Court "will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record

5

reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

   III. Analysis

   A. Adequacy of Plaintiff's Showing

"The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are similarly situated." *Realite v. Ark Rest. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (citations omitted). A plaintiff must demonstrate a common policy by all defendants. *See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 3d 545, 557-59 (S.D.N.Y. 2013) (limiting collective to only six out of 33 Pret A Manger stores because plaintiffs failed to demonstrate that they were similarly situated to employees of all stores). I find that Plaintiffs have fulfilled the minimal burden.

Plaintiffs' declarations and the CAC all state that Griffin directed them to work on Con Ed worksites. *See, e.g.*, CAC ¶ 100 (describing procedures for Griffin-assigned Con Ed worksites). A certain set of working conditions as described in the Flagger Memo (ECF 116 ¶ 3, 116 Ex. A) applied to all Griffin flaggers on Con Ed worksites. *See, e.g.* ECF 140-1 (Ballast Decl.), ECF 140-2 (Simone Decl.). Plaintiffs also declare that Con Ed "vigorously supervised, directed and controlled [their] work" and worked under the sole direction of a Con Ed supervisor." *See, e.g.*, ECF 140-1 Ballast Decl. ¶ 7; *see also* CAC ¶ 80. The Con Ed supervisors "routinely informed Griffin which employees they did and did not want to work on specific job sites with a specific crew." (ECF 140-1 Ballast Decl. ¶ 10). The Plaintiffs have spoken to other Griffin employees who were allegedly subject to the same pay practices. To be fair, certain Plaintiffs also allege conclusory allegations without sufficient factual support that "Con Ed, for all purposes and

6

intents, acted as my employer. Con Ed through its supervisors, agents and employees had control over my employment." (ECF 56-9 Dale Affidavit ¶¶ 14-15).

Although there are doubts as to whether Plaintiffs can ultimately prove that Griffin and Con Ed are joint employers, at this stage and constrained by the inquiry I can make, I find that Plaintiffs have shown a common policy and were similarly situated as to other flaggers that are hired by Griffin and directed to work at Con Ed worksites. *See Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (certifying collective of flagmen and other construction employees).

Con Ed argues, "Plaintiffs have not satisfied their burden of demonstrating that conditional certification is appropriate with respect to Con Edison because there is no evidence demonstrating that Con Edison was involved in any alleged common policy or plan to deprive them and the putative collective members of waiting time and travel time wages." (ECF 137 at 12). Further, Con Ed argues that "Con Ed and the Griffin Defendants are separate and legally distinct companies." (ECF 137 at 3 (citing Sebastopoli Decl.)). Although that may very well be true, FLSA actions have a functional definition of employer, and the FLSA broadly defines the employer-employee relationship. That determination of whether that relationship exists, "should be grounded in economic reality rather than technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quoting *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 911-12 (S.D.N.Y. 2013) ("The definition [of employer and employee] is necessarily a broad one in accordance with the remedial purpose of the [FLSA]."). Fact-finding

7

later on may unearth evidence that will cause the court to de-certify the collective.[5] *See McGlone*, 867 F. Supp. 2d at 442 (at step one, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations").

Accordingly, I certify a collective of Griffin flaggers, who worked on Con Ed worksites, for Plaintiffs' FLSA unpaid overtime and unpaid minimum wage claims.[6]

### B. Proposed Notice

Defendants raise multiple issues with Plaintiffs' proposed notice. There should be changes. The notice should include contact information for defense counsel. *See Slamna v. API Restaurant Corp.*, No. 12-CV-757 (RW), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013) ("Courts in this Circuit have generally concluded that such information is appropriate for inclusion in a notice of collective action"). The notice should also contain language that informs opt-ins that they may retain their own counsel. *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2011) ("The Notice should also be amended, as Defendants request, to state that participating plaintiffs may retain their own counsel.").

The parties shall meet and confer on the language of the proposed notice. Plaintiffs shall file the revised proposed notice by **October 14, 2020**. If Defendants still have objections to the notice's language after meeting and conferring with Plaintiffs, they may file objections and their preferred notice with a redline to Plaintiff's, by **October 21, 2020**. Following the Court's

---

[5] Indeed if the representations on the Griffin-Con Ed relationship made by the attorneys, including Plaintiffs' attorneys, at the October 29, 2019 conference are confirmed by discovery, the collective will likely need to be de-certified if Plaintiffs cannot prove Con Ed are joint employers.

[6] Plaintiffs allege a FLSA retaliation claim on behalf of Dale and Jones only.

8

approval of the notice, Plaintiffs may begin distributing the notice to members of the conditionally certified collective.

### C. Notice Period

The statute of limitations under the FLSA is two years, but is extended to three years in cases where willful misconduct is alleged. 29 U.S.C. § 255(a). District courts thus "routinely" apply the three-year statute of limitations to the notice period when plaintiffs plead a willful violation of the FLSA. *Cohen v. Gerson Lehrman Group, Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010); *see also Vasto v. Credico (USA) LLC*, No. 15-cv-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (approving a three-year limitations period in defining the scope of notice because plaintiffs alleged a willful violation of the FLSA). Some courts have approved six-year limitation periods where plaintiffs have asserted claims pursuant to both the FLSA and NYLL. *See, e.g.*, *Fonseca v. Dircksen & Talleyrand, Inc.*, No. 13-cv-5124 (AT), 2014 WL 1487279, at *6 (S.D.N.Y. April 11, 2014) (approving request for six-year notice period).

Other courts, however, approve only the three-year period, which is "the maximum time period to join an FLSA collective action." *Garcia v. Spectrum of Creations, Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015); *accord Romero v. La Revise Assocs. LLC*, 968 F. Supp. 2d 639, 648-49 (S.D.N.Y. 2013) (distinguishing three-year period under FLSA from six-year period under NYLL and rejecting plaintiff's request to apply six-year period); *Ramos v. Platt*, No. 13-cv-8957 (GHW), 2014 WL 3639194, at *4 (S.D.N.Y. July 23, 2014) (rejecting six-year period in favor of three-year period). After all, the NYLL does not provide for a collective action as distinct from a class action, which is a different procedure with different requirements. *See Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 587 (E.D.N.Y. 2012) ("To the extent the Plaintiffs seek to

provide notice to potential plaintiffs that fall outside of the putative FLSA class, but may have claims under the N.Y. Labor Law, they must follow discovery and notice procedures applicable to class actions under the Federal Rules of Civil Procedure.").

Plaintiffs request a notice period of six years to account for the NYLL claims. Defendants argue a three-year period is more appropriate, and, in any event, Griffin only began contracting flagging services for Con Ed on September 1, 2015. Further, where, as here, no class action has been certified pursuant to Fed. R. Civ. P. 23, "[i]t would be confusing to employees who are [ineligible] for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." *See Islam v. LX Ave. Bagels, Inc.*, No. 18-cv-04895 (RA) (RWL), 2019 WL 5198667, at *8 (S.D.N.Y. Sept. 30, 2019) (citing *Hamadou,* 915 F. Supp. 2d at 558); *Romero*, 968 F. Supp. 2d at 649 (limiting notice period to three years). In this case, the Court agrees with Defendants, and, accordingly, the notice period is three years.

### D. Opt-in Period

Plaintiffs seek to allow opt-in plaintiffs to join this litigation for a period of 90 days following dispersal of the notice. Defendants argue a period of sixty days is more appropriate. In this district, the courts "have coalesced around a standard 60-day notice period" (although permit longer periods on consent). *See Islam*, 2019 WL 5198667, at *8 (citing *Mark v. Gawker Media LLC*, No. 13-cv-4347, 2014 WL 5557489, at *1 (S.D.N.Y. Nov. 3, 2014)). Because the parties do not consent regarding the longer period, the opt-in period shall be 60 days.

### E. Equitable Tolling

In the event that conditional certification is granted, Plaintiffs request that the statute of limitations be tolled until the expiration of the opt-in period. (ECF 115 at 15). The reason for

this is that the statute of limitations for a potential opt-in plaintiff continues to run "until that plaintiff files the written consent opting into the suit." *Wolfgang's*, 767 F. Supp. 2d at 449. "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir. 1990)). The Second Circuit has cautioned that "equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstance[s],'" *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (alteration in original) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)), "where a plaintiff has been 'prevented in some extraordinary way from exercising his rights.'" *Johnson*, 86 F.3d at 12 (quoting *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985), *cert. denied*, 474 U.S. 851 (1985)). In the context of conditional certification under the FLSA, equitable tolling "might apply . . . where the defendant has concealed the existence of a cause of action from the plaintiffs." *Mark v. Gawker Media, LLC*, No. 13-cv-4347 (AJN), 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014).

Plaintiffs argue that equitable tolling is appropriate here because (1) "Defendants failed to comply with their statutory notice obligations" and (2) Defendants engaged in multiple retaliatory actions . . . thereby impeding potential opt-in plaintiffs [from] bringing forth their claims." (ECF 115 at 16). Defendants "agreed to toll the limitations period applicable to the putative collective members claims from March 18, 2020 to May 29, 2020." (ECF 137 at 25 n.11).

11

Plaintiffs have not offered any specific evidence why Defendants' purported failure to comply with their statutory notice obligations merits equitable tolling. Accordingly, equitable tolling is denied on this ground, except for the tolling from March 18, 2020 to May 29, 2020.

Plaintiffs' argument to equitably toll on behalf of "potential opt-in plaintiffs" is also rejected. First, Plaintiffs have not offered any specific details why potential opt-in plaintiffs merit tolling. Second, the potential opt-in plaintiffs' cases are not currently before the court and the court has no jurisdiction over their claims. Plaintiffs thus have not demonstrated a basis to equitably toll the statute of limitations on behalf of the entire collective in this case. If it later becomes apparent that equitable tolling arguments apply to individual plaintiffs who have actually opted into this litigation, the Court can address those issues at the second stage of certification. *See Contrera v. Langer*, 278 F. Supp. 2d 702, 725 (S.D.N.Y. 2017) (denying equitable tolling without prejudice to any plaintiff whose application "conforms to the requirements of the equitable tolling doctrine"); *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 116-17 (S.D.N.Y. 2015) ("[C]hallenges to the timeliness of individual plaintiff's actions will be entertained at a later date." (citations omitted)).

**F. Distribution**

Plaintiffs request that notice and consent forms be disseminated "by mail, email, text message, and social media." (ECF 115 at 17). Defendants assert that mail and email are sufficient. (ECF 137 at 24). Plaintiffs argue that "[t]urnover, relocation, lack of connection, and stale records impact the efficiencies of U.S. Mail and e-mail and demonstrate the need for more diverse methods to reach as many potential opt-in plaintiffs as possible." (ECF 149 at 10). Plaintiffs also argue that unspecified disruptions caused by the COVID-19 pandemic also merit

alternate forms of distribution. Because of the employees' high turnover rate, I find that dissemination by mail, email, text message, and social media is warranted. *See Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020) (distribution via email, mail, text message, and social media); *Vasto*, 2016 WL 2658172, at *16 (distribution via email and text message appropriate where "the nature of the employer's business facilitated a high turnover rate among employees."). The proposal to post the notice and consent forms on a website is denied, however, because Plaintiffs have not provided any details about the website.

The request for a "reminder" notice is denied. Plaintiffs must put forth a justifying need, which they argue is the "unprecedented upheaval of the COVID-19 pandemic." *See Guzelgurgenli v. Prime Time Specials*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (stating reasons for reminder notice). However, without seeing the contents of the reminder notice, I am unable to approve it. *See Jennings v. Cellco P'ship,* No. 12-CV-293, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012) ("Plaintiffs' counsel may also send one reminder letter during this 90-day notice period with the following language added to the proposed letter provided by Plaintiff: "This Notice Serves to Notify You of This Pending Lawsuit. The Court Does Not Encourage or Discourage Participation In This Case.").

### IV. Conclusion

For the reasons stated above, Plaintiffs' motion for certification of a conditional collective (ECF 114) is **GRANTED** to the extent it is for Griffin flaggers who worked on Con Ed worksites. There shall be a three-year notice period, no equitable tolling with the exception of the period between March 18, 2020 to May 29, 2020, and the proposed notice may be distributed by mail, email, text message, and social media. The parties shall meet and confer on

the language of the proposed notice. Plaintiffs shall file the revised proposed notice by **October 14, 2020**. If Defendants still have objections to the notice's language after meeting and conferring with Plaintiffs, they may file objections and their preferred notice with a redline to Plaintiff's by **October 21, 2020**.

The Clerk of Court is directed to close ECF 114.

**SO ORDERED.**

_s/ Ona T. Wang_

Dated: September 30, 2020  **Ona T. Wang**
New York, New York  United States Magistrate Judge