UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAVEN MOSES, *individually and on behalf of all others similarly situated,* **et al.**,

                **Plaintiffs,**

-against-

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., ET AL.,

                **Defendants.**

18-cv-1200 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, United States District Judge:**

Plaintiffs, a group of employees working as flaggers, bring suit against Defendants Griffin Industries, Griffin Security Services (together, "Griffin"), International Brotherhood of Electrical Workers Local 1430, Workforce1, Nique Irving, Winston Smith, Michael Smith, Andrew Muniz, Aaron Muniz, Dane Yee, Mario Lopez and Consolidated Edison of New York ("ConEd" or "ConEdison"). Plaintiffs have moved to certify a class for purposes of litigating their NYLL claims.

Defendant Griffin is a New York corporation providing workers for various security and construction projects. Aaron Muniz is the owner of Griffin. Michael Smith is listed as a point of contact for Griffin Industries with the New York Department of State. Andre Muniz oversaw human resources and personnel issues for Griffin. His duties ranged from onboarding to disciplining employees.

ConEd is a public utility, providing power to the vast majority of New Yorkers. As a major utility supplier, ConEd is responsible for the maintenance of a large swathe of

infrastructure in New York City and surrounding counties. New York state law required ConEd to provide for safety personnel, or flaggers, on some of its worksites. To aid in its work, ConEd contracts with vendors who provided flaggers. Griffin was one such supplier. In addition to providing flaggers for ConEd worksites, Griffin also provided security for other companies with whom they contracted.

Plaintiffs are a group of former Griffin employees who worked as flaggers at ConEd worksites. Flaggers were instructed to arrive at Griffin's office in the Bronx where they received their work assignments. Flaggers were only assigned to ConEd worksites; it appears ConEd was the only entity for whom it provided flaggers. They received their assignment from a dispatcher employed by Griffin. At the beginning of their work with ConEd, Griffin provided vehicles for flaggers to utilize in commuting to and from ConEd worksites. At a certain point, Griffin ceased this practice, opting instead to hire flaggers who could provide their own transportation. Flaggers with vehicles were paid 2 dollars extra an hour and were required to transport colleagues to worksites if asked.

Once at a ConEd worksite, flaggers were required to check-in with a Griffin dispatcher. They were also directed to check-in with an onsite ConEdison representative and record the "truck number" of the ConEd vehicle onsite. Griffin's Flaggers Manual repeatedly noted that if flaggers did not in some way alert their presence to ConEd—checking in with a supervisor or recording the truck number—they ran the risk of not being paid for the time spent at the ConEd worksite.

Flaggers were also instructed to seek a signature from a ConEd supervisor for their timesheets. Absent this signature, according to the manual, they again ran the risk of not being paid. But ConEd worksites often had no designated supervisor or one who did not follow the

practice of signing off on a flagger's timesheet. Griffin told flaggers that in these situations recording the ConEd truck number would help ensure they were paid.

The rules of conduct at the worksite appear to have been largely directed by ConEd. Although the flaggers' employee manual appears to have been created by Griffin, the manual directed flaggers to abide by directives given by ConEd's employees while at the worksite. Plaintiffs noted that they were often reprimanded by ConEd employees for their conduct at the worksite. Plaintiffs were employed as flaggers by Griffin who in turn contracted with ConEd to place their employees as flaggers at ConEd's worksites.

Plaintiff requests the Court certify the following class: "[A]ll persons employed by Defendants at any time from February 9, 2012, to the present . . . who worked as flaggers at any Con Ed work site in the state of New York . . . ." ECF No. 585 at 1.

## DISCUSSION

### A. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class certification. That is, plaintiffs must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To meet the requirements of Rule 23(a), "plaintiffs in the proposed class must demonstrate that they satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007).

3

In addition to the requirements of Rule 23(a), plaintiffs must demonstrate that a class is maintainable under Rule 23(b). Plaintiffs move for certification pursuant to Rules 23(b)(2) and 23(b)(3). Under Rule 23(b)(3), the court must decide whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification . . . must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

**B. Application**

    1. *Numerosity Under Rule 23(a)*

The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). Although, there is no bright line rule setting a requisite number of class members for certification, "numerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).

Plaintiffs offer ample evidence that potential class members satisfy numerosity under Rule 23. There are currently over 100 opt-in plaintiffs. Accordingly, the Court finds that Plaintiffs have met their burden under Rule 23(a)'s numerosity requirement.

4

       2. *Commonality and Typicality Under Rule 23(a)*

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact," *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007), "truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350. Plaintiffs need only "demonstrate that the class members 'have suffered the same injury." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks and alterations omitted). "The commonality requirement may be met when individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct.'" *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011).

Typicality "requires that the claims of the class representatives be typical of those of the class." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). A putative class satisfies this requirement "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). But "[A] representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Natural Gas*, 231 F.R.D. at 184 (quoting *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y. 1998)).

Potential class members seek common answers to two principal questions: (1) whether they are entitled to compensation for off-the-clock work and (2) whether ConEd may be held liable for this uncompensated work under a joint employer theory.

The first inquiry requires the Court to consider whether tasks performed before the official sign-in time on flaggers' timesheets were integral to their employment. *See Perez v. City of New York*, 832 F.3d 120, 124 (2d Cir. 2016) ("[A]n employer's requirement that pre- or post-shift activities take place at the workplace may indicate that the activities are integral and indispensable to an employee's duties."). It is sufficient that Plaintiffs provide evidence that their employers knew about their off hours work and did nothing to correct the practice. The fact that Griffin required flaggers to report to their Bronx location and wait to receive their ConEd worksite assignments supports Plaintiffs contention that travel was integral to their employment. Upon arriving at the ConEd worksite, flaggers were required to check-in with ConEd supervisors. If ConEd had not yet arrived, they were required to wait, periodically checking-in with Griffin dispatchers. Plaintiffs argue that ConEd necessarily should have known that flaggers were waiting on its team after having given Griffin the assignments. In fact, ConEd employees were required to sign-off on the flaggers time at the worksite; they were even empowered to make changes to the proposed timesheets. ConEd more than likely knew that flaggers were often waiting for the ConEd teams at the worksites. This waiting and checking-in appeared to be crucial to the flaggers ability to get paid. *See generally* Flaggers Manual.

As to the joint-employer inquiry, contrary to ConEd's arguments, Plaintiffs need not definitely prove the elements of their claim. Plaintiffs provide sufficient evidence to support their claims. Plaintiffs' declarations and the various deposition testimony demonstrates that ConEd had a degree of control over the flaggers conduct at their worksite. Flaggers attest that

6

they were reprimanded by ConEd supervisors and often told to defer to directives by ConEd employees.

Defendant does not squarely address whether Plaintiffs claims satisfy Rule 23(a)'s typicality requirement. They do not argue that the named Plaintiffs are subject to any unique defenses, and the Court can find none.

Accordingly, the Court finds that Plaintiffs have satisfied the commonality and typicality requirements under Rule 23(a).

### 3. Adequacy Under Rule 23(a)

Adequacy requires that the class representatives "will fairly and adequately protect the interests of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 267 (2d Cir. 2006) (internal quotation marks omitted). To determine adequacy, courts evaluate "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Class certification may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir. 1995) (quotation marks and alterations omitted). Courts may also consider "the honesty and trustworthiness of the named plaintiff." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Defendant raises no arguments as to the adequacy of the named plaintiff and proposed class counsel. Plaintiff Diaz has been involved in the litigation since its inception. Proposed class counsel appears to be competent and experienced in their representation. Accordingly, the Court finds that Plaintiffs satisfy the adequacy requirement under Rule 23(a).

### 4. Predominance and Superiority Under Rule 23(b)(3)

Rule 23(b)(3) requires plaintiffs to show that common questions predominate over individualized questions and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, a court examines Rule 23(b)(3)'s nonexclusive list of factors for consideration. The manageability of a class action is the most important of these factors. Fed. R. Civ. P. 23(b)(3)(D).

"The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiffs must demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are *more substantial* than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002). Predominance does not require the absence of individualized damages, but plaintiffs' damages methodology "must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

Potential class members seek common answers in determining whether their off-the-clock work qualifies for compensation and whether ConEd can be held liable for failing to pay.

Defendant argues that the since plaintiffs seek payment of prevailing wages as flaggers employed on ConEdison worksites, the analysis of their entitlement to prevailing wages is a multi-step, individualized inquiry that predominates over common questions and answers. Defendant is incorrect.

First, to establish entitlement to prevailing wages, Plaintiffs must prove that the worksites on which they were employed qualified as a "public work" within the meaning of Section 220. Under New York law, whether a project constitutes a public work depends on three factors:

(1) Whether a public agency must be a party to contract involving the employment of laborers, workers, or mechanics.
(2) The contract must concern a project that primarily involve3s construction-like labor and is paid for by public funds
(3) The primary object or function of the work product must be the use or other benefit of the general public.

*De La Cruz v. Caddell Dry Dock & Repair Co.*, 21 N.Y.3d 530, 538, 997 N.E.2d 1223, 1228 (2013).

*Second*, even if a particular project qualifies as a "public work," plaintiffs are not automatically entitled to the benefits of § 220. The City Comptroller has issued advisory memoranda delineating when a flagger working on a construction site falls within the confines of the statutes. *See Little v. Carlo Lizza & Sons Paving, Inc.*, No. 15 CIV. 7423 (PAE), 2017 WL 2462652, at *4 (S.D.N.Y. June 6, 2017). The memoranda identify two categories of flaggers—those engaged in "traffic control" duties and flaggers engaged in "safeguarding" duties. A flagger is primarily engaged in traffic control duties where they are primarily assigned "to alleviate vehicular congestion by directing the flow of the street traffic away from the vicinity of the construction site." *Little*, 2017 WL 2462652, at *4 (quoting Comptroller's Prevailing Wage

Memorandum accompanying Rule 56.1 statements).  However, where a flagger is "utilized on the construction work site, protecting the public from the inherent dangers on and about that site, safeguarding the work crew from the street traffic, and directing the movement of construction equipment in, on, and off the site," that flagger falls within the purview of section 220.  *Id.*

Although the determination of whether a flagger is entitled to a prevailing wage is a two-step inquiry, neither of the steps, alone or in concert, are giant steps that would overwhelm over the issues common to the class.  The first step's inquiry doesn't involve any probe into the individual workers' responsibilities, requiring only an analysis of the contracts or permits for a particular work site, as opposed to analyses unique to each worker.[1]

The second step in determining whether a worker is entitled to a prevailing wage requires a determination of whether the worker was engaged in traffic control versus safeguarding the public.  Answering this common question will not require time-intensive discovery.  No flagger's role is unique. There is no indication that there are thousands or hundreds or tens of categories of flagging work on a site.  There are just two: traffic controllers and safeguarders.  The necessity of determining how much each flagger worked in no more than two roles will not take an inordinate amount of time, nor will it distract from the common issues in this case.  The repetitive nature of the type of work performed by flaggers will make it easy to categorize.

The questions that are capable of categorical inquiries—pertaining to liability-- are more substantial than questions to be resolved on a case-by-case basis—pertaining to damages.

---

[1] Defendant recently submitted supplemental authority.  The case cited therein, bolsters, rather than hurts, the plaintiffs' case for class certification.  The fact that none of the workers at a particular site or any sites may be entitled to prevailing wages presents yet another question that is common to all of the class members, even if the answer is not favorable for the class.

A class action is superior to joinder or individual actions in litigating Plaintiffs' NYLL claims. Proceeding by joinder or individual actions would result in inordinately duplicative, overlapping discovery regarding issues common to the class.

5. *Ascertainability*

The Second Circuit recognizes the implied requirement of ascertainability when deciding to certify a putative class. Ascertainability "demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks omitted). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id*. at 264 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015). The class is sufficiently definite; ascertainability is met.

## CONCLUSION

For the foregoing reasons, Plaintiffs motion for class certification is **GRANTED**. The parties are ordered to file a joint status report on or before April 18, 2023.

**SO ORDERED.**

Dated:   March 31, 2023
         New York, New York                       _____/s/ **Andrew Carter**_____
                                                  **ANDREW L. CARTER, JR.**
                                                  **United States District Judge**

11