## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAVEN MOSES, STARAISHA MORRIS, DWAYNE DALE, ISMAIYL JONES, AYANNA BEACHAM, ANDRE MURRAY, VICTOR BALLAST, and LUIS SIMONE, individually and on behalf of all others similarly situated, | Civil Action No. 1:18-CV-01200-ALC-OTW |

Plaintiffs,

- against -

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC., GRIFFIN INDUSTRIES,
LLC, GRIFFIN SECURITY SERVICES,
MICHAEL SMITH, WINSTON SMITH,
ANDREW MUNIZ, and AARON MUNIZ,

Defendants.

**DECLARATION OF BETSY C. MANIFOLD IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT**

I, Betsy C. Manifold, declare as follows:

1.    I am an attorney duly admitted to practice before the Southern District of New York in the above-captioned litigation.  I am a member of the firm of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") in New York, New York, one of Plaintiffs' co-class counsel herein.

2.    I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Procedural History**

3.     On February 9, 2018 Named Plaintiffs Raven Moses, Staraisha Morris, Dwayne Dale, Ismaiyl Jones, Ayanna Beacham and Andre Murray[1] filed a complaint in the United States District Court for the Southern District of New York, titled *Moses et al. v. Consolidated Edison Company of New York, Inc.* (1:18-CV-01200-ALC-OTW). Dkt. No. 1.

4.     The Named Plaintiffs (and all other members of the proposed Settlement Class and Collective (collectively, "Plaintiffs") were flaggers performed flagging work on public streets, roadways, and sidewalks in New York City and New York State. As flaggers, their duties centered on using paddles to direct vehicular and pedestrian traffic flow to ensure the safety of the public on public roadways and thoroughfares impacted by Consolidated Edison Company of New York, Inc.'s ("Con Edison") work on public roadways.

5.     Defendants are Con Edison and Griffin Industries, LLC and/or Griffin Security Services, Inc. ("Griffin") and certain of Griffin's former officers and managers (collectively, the "Griffin Defendants," and collectively with Con Edison, "Defendants").[2]

6.     Con Edison is a major energy delivery company that provides electric and gas service for people and businesses in New York City and Westchester County. Its work is often conducted on or adjacent to publicly accessible roadways requiring the redirection of traffic for safety, and as such, it is required to use flaggers.

7.     Griffin is a business based in the Bronx, NY, and during the relevant period, its primary function was the provision of flaggers to Con Ed.

---

[1] Collectively with including consolidated Named Plaintiffs Victor Ballast and Luis Simone, "Named Plaintiffs."
[2] Also named in the original complaint were Dane Yee and Mario Lopez as Defendants. Dkt. No. 1. The first amended complaint (Dkt. No. 24) added Nique Irving, Sexton Alston, the International Brotherhood of Electrical Workers Local 1430, and Workforce1 as Defendants. On May 2, 2019, this court dismissed the claims against the International Brotherhood of Electrical Workers Local 1430. Dkt. No. 73. On July 27, 2019, the claims against Nique Irving and Workforce 1 were voluntarily dismissed. Dkt. No. 98. On March 1, 2022, Sexton Alston, Dana Yee and Mario Lopez were voluntarily dismissed. Dkt. No. 628.

8.    The Named Plaintiffs alleged that they were jointly employed by Con Edison and Griffin and that Defendants failed to pay Plaintiffs for all hours worked, including regular wages pursuant to the New York Labor Law ("NYLL") §§ 650, *et seq.*, overtime premium wages under the NYLL and Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), failed to provide adequate wage notices and wage statements as required under the NYLL § 195 (1), (3) and, as added in an amended pleading, failed to pay Plaintiffs the proper prevailing rate of wages applicable to their work on public work and/or public utilities projects.[3]

9.    On April 25, 2018, Plaintiffs filed an Amended Complaint.  Dkt. No. 24.

10.    On May 11, 2018, Con Edison moved to dismiss that complaint.  Dkt. Nos. 26, 27. On June 15, 2018, Plaintiffs opposed the motion.  Dkt. Nos. 38, 39.  On July 3, 2018, Con Edison replied.  Dkt. No. 40.

11.    On August 10, 2018, with the Court's leave, Plaintiffs filed the Third Amended Complaint ("TAC"). Dkt. Nos. 55, 56.

12.    On August 18, 2018, Con Edison moved to dismiss that complaint.  Dkt. Nos. 58, 59.  On September 12, 2018, Plaintiffs opposed the motion (Dkt. No. 64) and on September 23, 2018, Defendants replied.  Dkt. No. 65.  On March 22, 2019, the court largely denied dismissal of the Third Amended Complaint, granting Defendant's motion only as to fraud and insurance claims and the individual retaliation claims of two plaintiffs.  Dkt. 66.

13.    On February 11, 2020, Plaintiffs' Counsel filed their motion for conditional certification of the FLSA Collective Action, which was fully briefed as of July 7, 2020. Dkt. Nos. 114-116, 137-138, 140, 149-150, 164.

---

[3] Certain Named Plaintiffs also brought individual claims for wrongful termination.

14.    On April 17, 2020, Named Plaintiffs Victor Ballast and Luis Simone filed a complaint in the United States District Court for the Southern District of New York, captioned *Ballast, et al. v. Griffin Industries LLC, et al.* (20-cv-03108).

15.    That action was consolidated with this action under the caption, *Moses et al. v. Consolidated Edison Company of New York, Inc.* (18-cv-1200), and a consolidated amended complaint (Dkt. No. 160 "Consolidated Complaint")) was filed on July 29, 2020.  A true and correct copy of the Consolidated Complaint is attached hereto as **Exhibit A**.

16.    On September 30, 2020, the Court granted Plaintiffs' motion for conditional certification of the FLSA collective.  Dkt. No. 172.

17.    Approximately 350 individuals opted in to the action as collective members (the "Opt-in Plaintiffs").

18.    The Griffin Defendants timely filed an Answer to the Consolidated Complaint on October 12, 2020 (Dkt. No. 174), disputing the material allegations and denying any liability or damages in the amended class and collective action, and asserting affirmative defenses.  Similarly, Con Edison timely filed an Answer to the Consolidated Complaint, denying all material allegations and claims asserted therein on October 14, 2020 (Dkt. No. 175).

19.    On September 30, 2021, Plaintiffs moved for certification of a class action pursuant to Federal Rule of Civil Procedure 23.  Dkt. Nos. 584, *et seq*.

20.    Con Edison opposed that motion, but, on March 31, 2023, the Court granted certification of the Class.  Dkt. No. 678.

21.    On December 14, 2021, Con Edison moved to dismiss the claims of 121 of the members of the Collective (Dkt. Nos. 603, 604), on the basis that information provided indicated that those individuals did not provide any flagging services within the statute of limitations.  On

January 11, 2022, Plaintiffs opposed that motion (Dkt. Nos. 612 and 613), and briefing on the motion was completed as of January 25, 2022.  Dkt. No. 616.

22.     On September 30, 2022, the court granted that motion, finding that the Fair Labor Standards Act claims of persons who worked only before July 20, 2017 were time barred.  Dkt. No. 650.

23.     In a letter that Con Edison submitted as evidence in support for its motion to dismiss the claims of such people (Dkt. No. 571-1, at 3), Con Edison noted that there was another group of individuals who had opted into the collective for whom Plaintiffs had not been able to provide any information about their time of work on Con Edison work sites or dates of hire or termination. Over the course of discovery, it has become apparent that a number of these people many have been employed in capacities other than as "flaggers." It is possible, for example, that some of them were "parking coordinators," which is a position occasionally confused, even by employees, with "flagger," in which employees set up cones to block traffic, but do not stand in or near the roadway using flagging paddles, and typically spend part of their shifts in their parked vehicles.

24.     On May 15, 2023, Con Edison moved for partial summary judgment, asserting that it was not the flaggers' employer and did not jointly employ the Class and Collective members with Griffin, and thus that any claims against it that relied on its employer status must be rejected. Dkt. Nos. 685-691.   Plaintiffs zealously opposed that motion  (Dkt. Nos. 694 *et seq.*), and Defendants replied.  Dkt. Nos. 715-718.

25.     On March 28, 2024, the Court granted Con Edison's motion for partial summary judgment (Dkt. No. 736), and disposed of all of Plaintiffs' claims against Con Edison that were based on its status as an employer of the Class and Collective members.

26.     On April 25, 2018, the Court amended its order to reinstate one claim referenced in the initial order (Plaintiffs' Tenth Cause of Action for Breach of Contract), because that claim was

not based on joint employer status.  Dkt. No. 744.  Ultimately, it found for Con Edison as to the First through Ninth counts of the Complaint.

**History of Discovery in this Litigation**

27.    Before commencing the formal  litigation of this Action, Named Plaintiffs' counsel conducted a thorough investigation into the merits of the potential claims and defenses.  Plaintiffs' Counsel focused its investigation and legal research on the underlying merits of the Named Plaintiffs' and collective and class members' claims,  the damages to which they were entitled, and Defendants' potential liability.

28.    Plaintiffs' Counsel also interviewed the Named Plaintiffs in order to determine the hours that they worked, the wages they were paid, their job duties, and other information relevant to their claims.

29.    An initial case management conference was held in this matter on October 29, 2019, during which the Court entered an order setting deadlines for discovery and other pretrial proceedings.  Dkt. No. 105.

30.    Throughout the pendency of the litigation, the parties exchanged extensive written and documentary discovery, totaling tens of thousands of pages.  This included, to the extent available, wage-and-hour records for the Named Plaintiffs and other members of the Class (including invoices for flagger hours worked and daily sign-in sheets), all iterations of the contract between Griffin and Con Edison, sample street opening permits, work purchase orders, training materials, hiring documents, job specifications and disciplinary documents.  It also included written responses to interrogatories and multiple sworn factual declarations.

31.    In addition, Plaintiffs took the Rule 30(b)(6) depositions of several of Defendants' officers and managers.  These included: Griffin's former Vice President in Charge of Operations; a former Griffin field supervisor and dispatcher; Con Edison's Director of Supply Chain for

Strategic Procurement Operations; a Con Edison Senior Specialist of Permitting; and a Con Edison Manager of Permit Administration.

32.     Defendants conducted the depositions of five of the Named Plaintiffs: Dwayne Dale, Raven Moses, Staraisha Morris, Ismaiyl Jones and Victor Ballast. *Id.*

33.     Over the course of litigation, the Named Plaintiffs assisted with the preparation of the initial complaint and the amended complaints, assisted with the factual investigations of the claims, produced documents, provided information used in the damages analysis, five of them attended a deposition, and several attended the in-person mediation session.

34.     On or around January 22, 2024, the parties exchanged expert reports.

35.     Plaintiffs submitted the report of Paul M. Ribaudo, who offered expert testimony on the nature and scope of Plaintiffs' damages.

36.     Con Edison submitted the expert report of Dr. David B. Lasater, who offered testimony on the nature of flaggers' work on Con Edison worksites, as observed at various worksites.  It is Plaintiffs' understanding that this report was intended to rebut Plaintiffs' argument that Class members performed types of work that would qualify them for prevailing wages.

37.     Thus, the discovery in this matter was extensive and more than sufficient for Plaintiffs to assess the strengths and weakness of and potential rewards and risks associated with their claims in connection with their decision to settle the Action on the terms now proposed.  In addition, Plaintiffs, at all times, closely monitored the evolution of law in the area.

**Developments Concerning Griffin Defendants**

38.     During the course of discovery, it became apparent that the Griffin entities had largely ceased operation in mid-2018, when they lost the flagging contract with Con Edison, and that their business was effectively shuttered by the end of 2018.  *See In re Michael Smith*, S.D.N.Y. Bankr., 21-22203, Dkt. No. 4, at ¶ 6.

39.     The sole owner of the Griffin entities, Defendant Michael Smith, filed for Bankruptcy in April 2021.  S.D.N.Y. Bankr., 21-22203.

40.     Counsel for the Griffin Defendants has repeatedly sought to withdraw from representation, stating that those Defendants had stopped paying him when Mr. Smith entered bankruptcy.  Dkt. 728.

41.     Mr. Smith's liabilities were discharged in bankruptcy as of April 12, 2022.

42.     It is Plaintiffs' understanding that the Griffin Defendants do not have any resources to contribute to this settlement.

**Settlement Negotiations**

43.     Throughout the litigation, the parties engaged in informal and formal settlement negotiations.  To that end, the parties had numerous in person, telephone and e-mail communications regarding the factual and legal issues in the case, including the ones listed below.

44.     On September 17, 2019, the then-active parties had an initial, in person, mediation session.  The parties were unable to reach resolution at that time.

45.     On March 10, 2022, May 17, 2022, and June 15, 2022, parties attended in person or telephonic pre-settlement conferences before Magistrate Judge Wang.  In between those conferences, parties communicated informally about settlement.

46.     The court scheduled an in person formal settlement conference for September 19, 2022.  On that date, Plaintiffs and Con Edison attended a substantial and significant mediation session before this Court's Magistrate Judge Ona T. Wang.  Despite extensive discussions and the significant assistance of the magistrate, the parties were unable to reach an agreement.

47.     In April 2024, after the Court's orders on dismissal of certain members of the FLSA collective and its grant of partial summary judgment, the parties again began to communicate about the possibility of a settlement.

48.     The parties had another settlement conference before Magistrate Judge Wang on July 31, 2024.  The parties were again unable to reach a mutually acceptable resolution, but agreed to continue discussions.

49.     The discussions continued over the next months, both without the court's assistance, and with its assistance through settlement calls held on September 5, 2024 and October 2, 2024.  Finally, on approximately October 21, 2024, Plaintiffs and Con Edison reached a resolution in principle to resolve this Action on a classwide basis.

50.     Over the next several months, the parties continued to negotiate the final terms and language of the settlement agreement. The parties exchanged drafts of the settlement agreement while continuing to negotiate the terms of the settlement.  At this time, the parties have reached an agreement on all outstanding issues, which are memorialized in a formal Joint Stipulation of Class and Collective Settlement Agreement and Release (hereinafter the "Settlement Agreement") attached hereto as **Exhibit B**.

51.     At all times, settlement negotiations were conducted on an arm's-length basis.

52.     The parties did not enter into any agreements other than the terms and conditions set forth in the Settlement Agreement, including any agreements as to attorneys' fees or any other payments.

53.     As stated *supra* at ¶ 35, Plaintiffs' Counsel retained an expert who prepared a damages analysis.  He did so by using time and pay records provided by Griffin and Con Edison, as well as information gathered from the Named Plaintiffs.  In this way, Plaintiffs calculated off-the-clock unpaid hours and unpaid prevailing wages.

54.     Plaintiffs' expert calculated class-wide damages at a total of $4,272,288 in unpaid wages, including $1,370,475 in unpaid "off-the-clock" time for time allegedly spent waiting in Con Edison's yards and traveling between the yards and the jobsites, $1,751,583 in unpaid

prevailing wages (assuming that 25% of the work was performed on streets within New York City under Street Opening Permits), $150,230 in unpaid spread of hours pay, $2,598,250 in wage notice violations, $3,386,250 in wage statement violations.   In total, with liquidated damages and prejudgment interest, Plaintiffs calculated total class-wide damages of $11,163,536.  *Id.*[4]  As such, the Settlement Amount represents over 6.7 % of Plaintiffs' counsel's calculated maximum unpaid wages damages.

55.     Throughout the litigation, Defendants have strongly disputed liability for all damages claimed by Plaintiffs.  Likewise, Con Edison disputed the appropriateness of collective and class treatment.

56.     Plaintiffs and Con Edison have all agreed upon the written terms of the Settlement Agreement, which disposes of all claims of all parties.

57.     As is evident by the lengthy settlement negotiations and involvement of Magistrate Judge Wang in the settlement discussions, at all times during the settlement negotiation process, settlement negotiations were conducted on an arm's-length basis.

**The Terms of the Settlement Agreement**

58.     The parties have agreed to settle the claims of all persons employed by the Griffin Defendants at any time from February 9, 2012 through March 31, 2023 who worked as flaggers at any Con Edison work site in the state of New York ("Settlement Class Members"). Ex. B ¶ 1.35.

59.     Plaintiffs believe that there are approximately 868  Class Members, based on the wage data records that Defendants were able to provide.

60.     The settlement compensation consists of Seven Hundred and Twenty-Five Thousand Dollars ($725,000.00) ("Settlement Amount"), plus up to Thirty-Thousand Dollars

---

[4] This total would increase to $13,662,399 if 50% of the sites at which Class Members worked required Street Opening Permits, and $16,276,273 if 75% of them did, but Defendants have produced significant evidence suggesting that the 25% figure has most support.

($30,000.00) allocated specifically to Publication of Class Notice (the "Notice Amount"). Ex. B hereto, ¶¶ 1.15, 1.18.

61.    Within ten (10) days of an order granting preliminary approval, Con Edison will transfer the Notice Amount to the Claims Administrator. Within twenty-one (21) days of receipt of the Notice Amount, the Claims Administrator shall issue notice as set forth in the Settlement Agreement.

62.    These and all other relevant terms are set forth in the Settlement Agreement.

63.    Plaintiffs' Counsel has not entered into side agreements or other agreements regarding attorneys' fees and costs aside from the terms set forth in the Settlement Agreement.

64.    The parties agreed to retain Simpluris as the Settlement Claims Administrator after obtaining proposals from potential settlement administrators to choose the most cost-effective company to administer the settlement. Ex. B ¶ 1.32. The responsibilities of the Settlement Claims Administrator shall include, *inter alia*, the issuance of Notice Packets to all Class Members, the receipt of Claim Forms from Participating Claimants, the receipt of any Opt-out statements or objections from Class Members and/or Participating Claimants, the maintenance of accurate records of all documents sent and received during the settlement administration, the opening and administration of the QSF account, the receipt of Defendants' payment of the Settlement Amount, the calculation of Authorized Claimants' individual shares, the mailing of settlement payments to Authorized Claimants, the calculation of tax withholdings and payments, and continued communication and provision of reports as necessary to Class Counsel to facilitate the Settlement. Ex. B ¶¶ 2.4(A)-(C), 2.7(C)-(D), and 3.2(A). The Settlement Administrator's reasonable costs are to be paid from the Settlement Amount.

65.    The Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Class Notice") is attached hereto as **Exhibit C**. The proposed Claim Form that Class

Members must submit to participate in the monetary recovery of the Settlement, is attached hereto as **Exhibit D**. A Proposed Short-form Notice to be used for Publication is attached hereto as **Exhibit E**. The Settlement Claims Administrator will send these materials in English and provide a contact number and email address for information in Spanish.

66.    The Claim Forms sent to individuals will include the number of weeks that an individual worked in New York City and outside the City.  If Con Edison's and Griffin's records do not indicate that an individual who is currently a member of the previously approved Collective worked any time during the relevant period as a flagger on Con Edison worksites, that individual's notice will reflect zero weeks as a flagger and they will not be eligible to recover in the Settlement.

67.    All persons receiving notices will be given an opportunity to provide documentation, if they possess any, establishing that they worked a different number of weeks than the notice provided to them.

68.    Mail and publication are appropriate vehicles for communicating settlement information to the Class Members, as the Class is comprised of skilled individuals who have access to internet and who could have moved or changed their place of residence during the relevant time period.

69.    Plaintiffs will apply for reimbursement for the actual litigation costs plus up to one-third of the Settlement Fund for attorneys' fees.  Ex. B ¶ 3.5(A). This payment was set forth in the retainer agreements signed by the Named Plaintiffs and is clearly communicated to Class Members via the Class Notice. Plaintiffs' Counsel shall receive attorneys' fee payments from the Settlement Claims Administrator at or around the same time as settlement checks are mailed to Authorized Claimants.  *Id*. at ¶ 3.5(C). Plaintiffs will seek reimbursement from the Settlement Amount for reasonable costs associated with administration of the Settlement.  *Id*. at ¶ 3.5(A).

**The Costs and Risks of Continued Litigation**

70.    Further litigation without settlement would necessarily result in significant additional risk, expense, delay, and expenditure of resources for all parties and the Court.  If the matter ultimately went to trial, a complicated trial would be necessary, featuring extensive testimony by Defendants, the Named Plaintiffs, and additional officers and managers of Defendants, in addition to substantial expert testimony. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as require substantial judicial resources to adjudicate the parties' disputes. A trial of the damages issues would be costly and would further defer closure.

71.    Increasing the risk of recovery, as set forth *supra* at ¶ 39, prior to the reaching of the Settlement Agreement, Griffin's sole owner entered into bankruptcy and had his liabilities discharged in that bankruptcy.  Griffin's counsel made it clear repeatedly that he was not being paid for his work.  All available evidence suggests that if Plaintiffs prevailed at trial, due to Griffin's financial status, recovery of a judgment against it would be uncertain, if not impossible.

72.    In addition, significantly, the Court has already found on summary judgment that Con Edison is not a joint employer of the Class and Collective Members.  As such, it has dismissed these flaggers' claims against Con Edison for Unpaid Minimum Wage under the FLSA and NYLL, Unpaid Overtime under the FLSA and NYLL, Unpaid Spread of Hours Wages under the NYLL, other failure to pay wages under the NYLL, for Wage Statement Violations and Wage Notice Violations under the NYLL, and for Unreimbursed Business Expenses.  Those claims give rise to the vast majority of Plaintiffs' potential damages.  *See supra* at ¶ 54.

73.    To have any chance on recovering for those claims, Plaintiffs would have to proceed through trial on the remaining claims, appeal the summary judgment decision against them on the joint employer claims, then, if Plaintiffs were ultimately successful, go back to the District

Court to allow it to address whether Defendant Con Edison was liable on those claims, all of which would involve significantly further risk, delay and expense.

74.    To prove liability (including on the claims that have been dismissed against Con Edison), the Named Plaintiffs and putative Class Members would have to prove that they: (1) should have been, but were not paid the appropriate prevailing wages and supplemental benefits; and (2) were not paid for all hours that they worked, including the hours spent Griffin's offices after sign in, waiting to be assigned to a Con Edison worksite; waiting at Con Edison's yards; traveling between the jobsites and Defendants' yards or offices; or travelling between jobsites. Furthermore, they would have to prove that they were not provided with appropriate wage notices and accurate wage statements from Defendants during the relevant time period. Significantly, the Plaintiffs would need to overcome the lack of payroll records demonstrating when employees performed off-site work outside of Defendants' jobsites.

75.    Plaintiffs would also likely face de-certification motions in advance of trial.  Con Edison, and potentially Griffin, would likely pursue dispositive motions as to Defendants' liability with respect to Plaintiffs' remaining claims, including the prevailing wage claim. Plaintiffs believe that they could ultimately establish Defendants' liability on these claims, but to do so would require extensive motion briefing, a lengthy trial, successful appeal after trial as to the claims on which summary judgment has already been granted against Plaintiffs, and success at further proceedings in the District Court after remand.

76.    While Plaintiffs believe that their claims are meritorious, I and the other Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the resolution of damages issues, the outcome of the trial, the ruling on the appeal that it is evidence will be necessary, and the outcome of further proceedings in the District Court after remand, if

Plaintiffs were successful at appeal, are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates this uncertainty.

**Class Counsel's Qualifications**

**Wolf Haldenstein**

77.     My firm, Wolf Haldenstein, is highly experienced in class action litigation on behalf of employees who have not been paid overtime or other compensation to which they are entitled. The firm has successfully litigated numerous claims under the federal Fair Labor Standards Act and state labor laws alleging defendants' failure to pay overtime and other wages that they owed, and taking of improper deductions from compensation for various company expenses. Wolf Haldenstein has served as lead or co-lead counsel, or in another equivalent lead role, in some of the most significant overtime class actions brought in the United States. The firm has recovered extremely substantial amounts in wages for its clients.  Some of the firm's recoveries in wage and hour cases include the following: *LaVoice v. Citigroup Global Markets, Inc*., Case No. C 07-801 (CW) (N.D. Cal.)) ($108 million settlement); *In re Wachovia Securities, LLC Wage and Hour Litigation*, MDL No. 07-1807 DOC (C.D. Cal.) ($39 million settlement); *In re Wachovia Securities, LLC Wage and Hour Litigation (Prudential)*, MDL No. 07-1807 DOC (C.D. Cal.) ($11 million settlement); *Miguel Garcia, et al. v. Lowe's Home Center, Inc. et al.*, Case No. GIC 841120 (Barton) (Cal. Sup. Ct, San Diego) (co-lead, $1.65 million settlement w/ average class member recovery of $5,500, attorney fees and cost awarded separately).

78.     The firm is also a nationwide leader in a wide range of Rule 23 class actions. Some of the firm's recoveries in other significant Rule 23 class actions include the following: *In re Packaged Seafood Products Antitrust Litigation*, No. 15-md-02670 ($152 million settlement for a class of indirect purchasers of packaged seafood products); *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, No. 1:14-md-02542-VSB (S.D.N.Y.) ($31 million settlement);

*In re Genetically Modified Rice Litigation*, MDL 1811 (E.D. Mo.) (Wolf Haldenstein represented U.S. rice farmers in this landmark action against Bayer A.G. and its global affiliates, achieving a global recovery of $750 million); *In re Beacon Associates Litigation*, Master File No. 09 Civ. 0777 (LBS) (S.D.N.Y.) ($219 million settlement in this and related action); *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) (a class action brought on behalf of over 27,500 current and former tenants of New York City's iconic Stuyvesant Town and Peter Cooper Village housing complexes, settlement totaling over $173 million, plus injunctive relief); *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS) (S.D.N.Y.) (a novel and sweeping amalgamation of over 300 class actions  which resulted in a recovery of $586 million); *In re: Zoom Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-0291 (N.D. Cal.) (member of Plaintiffs' Steering Committee; settled for $85 million).

79.    Attached hereto as **Exhibit F** is a true and correct copy of the resume of my firm, Wolf Haldenstein Adler Freeman & Herz LLP in support of appointing my firm as co-lead counsel for the Settlement Class in this litigation.

80.    Attached hereto as **Exhibit G** is a true and correct copy of a declaration dated May 1, 2025 submitted by Brent Pelton, Esq. in support of appointing his firm, Pelton Graham LLC as co-lead counsel for the Settlement Class in this litigation.

81.    Attached hereto as **Exhibit H** is a true and correct copy of a declaration dated May 4, 2025 submitted by George T. Peters, Esq. in support of appointing his firm, the Law Offices of George T. Peters as co-lead counsel for the Settlement Class in this litigation.

I declare under penalty of perjury, under 28 U.S.C.§1746, that the foregoing is true and correct.

Executed this 27th day of June, 2025
San Diego, California

By:    *Betsy C Manifold*
       Betsy C. Manifold

16